625 A.2d 1322

**Scott M. KETTERER, Appellant,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 24, 1992.

Decided May 25, 1993.

Timothy P. Wile, Asst. Counsel In–Charge of Appellate Section, for appellee.

Frank W. Ittel, Jr., for appellant.

Before DOYLE and McGINLEY, JJ., and FRIEDMAN, Judge.

DOYLE, Judge.

Scott M. Ketterer appeals an order of the Court of Common Pleas of Allegheny County sustaining the one-year suspension of his operating privileges pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).[1]

The undisputed facts are as follows. On January 25, 1992, Officer Donald Drier, while proceeding to a work detail at a

---

1. Section 1547(b) of the Vehicle Code provides for the suspension of a driver's license for a period of one year upon a licensee's refusal to submit to chemical testing to determine blood alcohol content. Section 1547(a), 75 Pa.C.S. § 1547(a), commonly known as the Implied Consent Law, provides that anyone who operates a motor vehicle in the Commonwealth is deemed to have consented to chemical testing of his or her blood where an officer has reasonable grounds to believe that the driver is under the influence of alcohol or a controlled substance.

nearby restaurant, observed a pickup truck ahead of him in the same lane. The pickup truck was swerving in and out of the lane, forcing cars to veer into the oncoming lane to avoid it. The truck was proceeding to the same restaurant as was the officer so he followed the truck into the restaurant parking lot. There Officer Drier observed the driver of the truck, Ketterer, alighting from the truck. Officer Drier observed that Ketterer was "staggering when he was walking and was very unsteady on his feet." Officer Drier approached Ketterer and "observed that his eyes were bloodshot and that there was a strong odor of intoxicating beverage from him."

Officer Drier asked Ketterer to perform a field sobriety test, which he assented to and failed. Drier then informed Ketterer that he was being placed under arrest for driving under the influence of alcohol. Because Drier was to remain at the restaurant he radioed Officer Robert Martin, who arrived on the scene, handcuffed Ketterer and transported him to North Hills Passavant Hospital to have his blood drawn. Martin informed Ketterer that he was requesting a blood test from Ketterer, which Ketterer could refuse. Martin further informed him that if he refused, his driving privileges would be suspended for a year.

Ketterer refused the test. Ketterer exhibited no outward signs of confusion, nor did he ask for an attorney, nor was he given any criminal *Miranda*[2] warnings. The Department of Transportation, Bureau of Driver Licensing (DOT), subsequently suspended Ketterer's operating privileges, effective April 2, 1992. Ketterer appealed the suspension to the Court of Common Pleas of Allegheny County. Ketterer testified before the trial judge, who found him credible, that he thought that the one-year loss of his operating privileges was the only penalty that he would suffer and that he was unaware of the criminal proceedings for DUI. The trial court found, however, that because Ketterer did not request an attorney "he did not activate the state's duty to warn him he was not entitled to

**2.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

one under *McFadden* [3] and *O'Connell.* [4] As for the criminal proceedings, the police officers had no affirmative duty to give notice concerning them [in the civil license suspension appeal]." The trial court, therefore, dismissed Ketterer's appeal. Ketterer has appealed to our Court.

On appeal, Ketterer argues that his license suspension was "fundamentally unfair" because: 1) he was not advised that he had no right to consult with an attorney prior to undergoing or refusing a blood test, despite not having been read his *Miranda* rights, and 2) he was not advised that the automatic one-year suspension of his vehicle operating privileges for refusal to take a blood test was in addition to any criminal penalties that could be assessed.

Initially, we note that Ketterer does not challenge the trial court's finding that DOT established the prima facie elements in support of a suspension found under 75 Pa.C.S. § 1547(b), which provides, in relevant part:

**(b) Suspension for Refusal.—**

(1) If any person placed under arrest for a violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.

(2) It shall be the duty of the police officer to inform the person that the person's operating privilege will be suspended upon refusal to submit to chemical testing.

(3) Any person whose operating privilege is suspended under the provisions of this section shall have the same right of appeal as provided for in cases of suspension for other reasons.

With regard to Ketterer's first ground for appeal, he does not dispute that he was warned of the consequences of his

3. *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989).

4. *Commonwealth, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989).

refusal, but asserts that he should have been further warned that he did not have a right to an attorney before deciding whether or not to take the blood test, even though he did not ask to speak to an attorney. The failure of the arresting officer to warn him, Ketterer argues, precluded him from making a knowing and conscious decision to refuse to take the blood test.

The law is now settled, and this Court has now made clear, interpreting the Supreme Court's decisions in *O'Connell* and *McFadden,* that, "where no *Miranda* warnings are given and there is *no* overt manifestation of confusion, no *O'Connell* warning [5] is required...." *Department of Transportation, Bureau of Driver Licensing v. Sorg,* 147 Pa.Commonwealth Ct. 82, 90–91, 606 A.2d 1270, 1274 (1992) (footnote omitted), *petition for allowance of appeal denied,* 531 Pa. 657, 613 A.2d 561 (1992) (footnote omitted) (emphasis in original).

■ Ketterer's relevant testimony before the trial court was as follows:

Q. What did you understand Officer Martin to be advising you?

A. Officer Martin advised me that if I did not take the blood test that I would lose my driving privileges for a one year period and my understanding, *which was just from my interpretation,* was that it was—it would expedite things if I would automatically lose my driver's license for a year. It would eliminate time, court time, attorneys's [sic] fees and *that was my understanding* of that, that I would automatically lose it for a year and not have any recourse other than, you know, actually lose it for one year.

Q. Did Officer Martin tell you that the suspension to which he referred would be in addition to any criminal penalty including suspension for a DUI conviction?

A. No. I *interpreted* that I actually lost all my driving privileges for a year without any question at all.

. . . . .

5. A warning that the Licensee has no right to consult with an attorney before assenting or refusing to submit to a chemical test. *O'Connell.*

Q. Mr. Ketterer, Officer Martin told you if you didn't take the blood test you would lose your license for a period of one year?

A. Yes, a flat one year.

Q. Did you understand that?

A. I understood it that it would be a total of a one year suspension.

(N.T. pp. 16–17) (emphasis added).

Ketterer never testified that he overtly manifested any indication of his confusion. He freely admitted that it was his own "interpretation" that caused the confusion, not the action of the police, which is the ill that the *O'Connell* warning was created to cure. We addressed this very situation in *Appeal of Attleberger*, 136 Pa.Commonwealth Ct. 329, 583 A.2d 24 (1990), *appeal dismissed as having been improvidently granted*, 531 Pa. 450, 613 A.2d 1203 (1992), where we explained that, "*O'Connell* and *McFadden* do not add a safety net to someone falling into such self-induced and self-destructive confusion about what the law is or should be." *Id.* 136 Pa.Commonwealth Ct. at 335, 583 A.2d at 27. Ketterer clearly understood the warning he was given. His subsequent speculation as to the legal consequences of his action was undertaken at his peril. Therefore Ketterer was not entitled to an *O'Connell* warning because he did not ask to speak to an attorney, did not manifest confusion in any other way, and because he was not administered *Miranda* warnings.

■ Ketterer's second argument is that he should have been informed that the one-year license suspension was in addition to any criminal penalties assessed. In *Sorg*, we suggested that the police should tell a licensee who overtly manifests confusion over his rights:

2. That the request to submit to chemical testing is not a criminal proceeding ...

*Sorg*, 147 Pa.Commonwealth Ct. at 91, 606 A.2d at 1275 (footnote omitted). But, because we have already determined that Ketterer was not overtly confused, no such warning was required. Additional criminal penalties are irrelevant to Ket-

terer's appeal of his license suspension. Clearly, a licensee's criminal trial is the correct forum for asserting the absence of such *Miranda* type criminal warning challenges.

■ Ketterer contends further that because he was unaware of the potential criminal charges to be imposed, in addition to the suspension for refusing the blood test, he should have been given *Miranda* warnings prior to taking the test. Ketterer cites Judge James R. Kelley's dissent in *Attleberger* as authority for his argument; but of course, that is not controlling authority, and none otherwise exists. Moreover, as we pointed out in *Attleberger,* such advice might actually create the very confusion sought to be avoided. *Id.* 136 Pa.Commonwealth Ct. at 336, 583 A.2d at 28. We declined in *Attleberger* to require a *Miranda* warning in every case of refusal and we follow that holding here.

Based on the foregoing discussion, we affirm the decision of the trial court.

## ORDER

NOW, May 25, 1993, the order of the Court of Common Pleas of Allegheny County in the above-captioned is hereby affirmed.

FRIEDMAN, Judge, dissenting.

In this case, Ketterer was informed by the police that his license would be suspended for one year for failure to submit to chemical testing. Ketterer was not informed that the one year suspension *would be in addition to any penalties that would be imposed if he were convicted* of violating 75 Pa.C.S. § 3731. He argues that "explaining that a test refusal will result in an automatic suspension without advising that such suspension will be in addition to any criminal penalties is ... overwhelmingly unfair." (Appellant's brief, p. 10.) I agree with this argument; since the majority rejects it, I must respectfully dissent.

The Department argues in its brief that there is no precedent requiring the warnings sought by Ketterer in this case.

I must acknowledge that this assertion is correct. Nonetheless, fairness dictates that such additional warnings should be given, and on that basis alone, I would require them. This is especially so since the warnings in this regard could be short, to the point and not overly confusing.

The majority rejects this argument, stating that the correct forum for asserting this challenge is at the criminal trial for the section 3731 violation. I cannot agree. Ketterer is not arguing that the defects here somehow effect the possibility of a criminal conviction; rather, he is arguing that the warnings were insufficient to allow him to make a knowing and conscious refusal. In *Commonwealth v. Danforth*, 530 Pa. 327, 608 A.2d 1044 (1992), the Supreme Court made clear that a civil suspension for failure to submit to chemical testing is proper only where the refusal is knowing and conscious. To make a knowing and conscious refusal, a licensee must be apprised of all of the consequences of a refusal; Ketterer was not so apprised. Hence, this dissent.