700 A.2d 922

GARY BARBERA DODGE, INC., Appellant,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF MOTOR VEHICLES, Appellee.

Supreme Court of Pennsylvania.

Argued Dec. 10, 1996.

Decided Sept. 17, 1997.

Lawrence R. Weider, Harrisburg, for Gary Barbera Dodge.

Timothy P. Wile, Harold H. Cramer, Harrisburg, for Dept. of Transp.

Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE and NIGRO, JJ.

*OPINION*

NIGRO, Justice.

Gary Barbera Dodge, Inc. ("Barbera") appeals from the Commonwealth Court's determination that Barbera failed to submit timely automobile title applications to the Pennsylvania

Department of Transportation ("PennDOT") and that delivery to an authorized messenger service was not a "relevant mitigating event." For the following reasons, we reverse in part.

Barbera is a licensed new and used automobile dealer which performs title work on the vehicles it sells. On November 19, 1993, PennDOT notified Barbera that it had filed untimely title applications on fifty-nine occasions in violation of 75 Pa.C.S. § 1103.1(d), which requires that title applications for automobiles purchased from dealers be mailed or delivered to PennDOT within 20 days of the date of purchase.[1]

Following an administrative hearing, PennDOT issued an order on May 13, 1994 determining that Barbera had failed to submit timely title applications to PennDOT on fifty-seven occasions in violation of section 1374(a)(5) of the Vehicle Code ("the Code"), 75 Pa.C.S. § 1374(a)(5)(1995).[2] PennDOT imposed fifty-seven separate $200 penalties against Barbera, totalling $11,400.[3] On June 6, 1994, Barbera appealed PennDOT's order to the trial court, which reversed following a de novo hearing.

1. 75 Pa.C.S. § 1103.1(d) provides in part:
   If the application refers to a vehicle purchased from a dealer, the dealer shall mail or deliver the application to the department within 20 days of the date of purchase. . . .
   75 Pa.C.S. § 1103.1(d)(1995).

2. 75 Pa.C.S. § 1374(a)(5) provides:
   (a) Suspension or revocation after opportunity for hearing.—The department may impose a monetary penalty for certain violations and offenses as prescribed by regulation or this section . . . in any of the following cases when the department finds upon sufficient evidence that:
   (5) The registrant has failed to deliver to a transferee lawfully entitled thereto or to the department, when and as required by this title, a properly assigned certificate of title.
   75 Pa.C.S. § 1374(a)(5)(1995).

3. The penalty was imposed pursuant to section 1374(d)(2), which provides:
   If the department finds that the registrant has violated subsection (a)(5) or (7) as a third offense, the registrant may be sanctioned with a monetary penalty of not less than $100 and not more than $200 per violation.
   75 Pa.C.S. § 1374(d)(2)(1995).

At the hearing, Barbera's title clerk, Audrey Brown, testified that Barbera utilized a licensed messenger service, Nelson's Messenger Service ("Nelson's"), to pick up Barbera's completed title work and then deliver it to PennDOT. Brown testified that she generally processed the title work in seven days, but that Nelson's was not submitting the title work to PennDOT in a timely fashion. The trial court held that "timely delivery of the documents to an authorized messenger service was tantamount to delivery to [Penn]DOT," N.T. at 34, and thus Barbera was not in violation of the Code.

■ The standard of review on appeal is to determine whether the findings below are supported by substantial evidence, whether an error of law has been committed or whether an abuse of discretion has occurred. *Commonwealth v. Boucher,* 547 Pa. 440, 691 A.2d 450 (1997); *Commonwealth, Department of Transportation v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989); *Philadelphia Honda, Inc. v. Commonwealth, Department of Transportation,* 666 A.2d 349 (1995).

Applying this standard, the Commonwealth Court reversed the trial court, finding (1) that Barbera's delivery of the title applications to Nelson's did not constitute timely delivery of the applications to PennDOT; and (2) that Nelson's delayed delivery of the title documents to PennDOT did not constitute a "relevant mitigating event" under section 1374(b) which would excuse Barbera's untimely delivery.[4]

We granted allocatur in order to determine whether Barbera failed to timely submit the title documents to PennDOT under section 1374(a)(5), and, if so, whether Nelson's failure to timely deliver the title applications to PennDOT constituted a relevant mitigating event under 75 Pa.C.S. § 1374(b).[5]

---

4. Section 1374(b) provides:

(b) Mitigating events.—The opportunity for a hearing as authorized by subsection (a) shall include the consideration of relevant mitigating events as prescribed by regulation for violations and offenses of subsection (a)(2), (5) and (7).

75 Pa.C.S. § 1374(b)(1995).

5. The Commonwealth Court also addressed the issue of whether delivery to Nelson's was delivery to a "transferee" under 75 Pa.C.S.

Pursuant to 75 Pa.C.S. § 1374(a)(5), PennDOT may impose a monetary penalty when it finds upon sufficient evidence that "the registrant has failed to deliver to a transferee lawfully entitled thereto or to [PennDOT], when and as required by this title, a properly assigned certificate of title." 75 Pa.C.S. § 1374(a)(5)(1995).

■ Barbera argues that delivery of the title documents to Nelson's within 20 days of purchase constituted timely delivery to PennDOT under section 1374(a)(5). However, Barbera fails to cite any provision in the Code supporting this assertion. As indicated by the Commonwealth Court, while messenger services are licensed to transact business with PennDOT, 75 Pa.C.S. §§ 7501–7506, they are not authorized under any provision of the Code to act as PennDOT's agent for the purpose of accepting delivery of title documents. Thus, delivery of the title documents to Nelson's was not the equivalent of delivery to PennDOT.

■ Alternatively, Barbera argues that even if its delivery of the documents to Nelson's was not equivalent to delivery to PennDOT, delivery to Nelson's constituted a relevant mitigating event under section 1374(b) of the Code. Section 1374(b) requires that PennDOT consider relevant mitigating events when holding an administrative hearing on whether a dealer violated section 1374(a)(5) of the Code.

§ 1374(a)(5), *infra*, which provides that a dealer may be penalized for late delivery of title documents where "[t]he registrant has failed to deliver to a *transferee lawfully entitled thereto* or to the department, when and as required by title, a properly assigned certificate of title." 75 Pa.C.S. § 1374(a)(5)(emphasis added). The Commonwealth Court held that delivery of the title documents to Nelson's did not constitute delivery to a "transferee" under 75 Pa.C.S. § 1374(a)(5)(1995), reasoning that Nelson's was not a "transferee lawfully entitled" to accept delivery of title applications within the meaning of the Code because a "transferee" can only be the purchaser of a vehicle.

In its brief to this Court, Barbera does not argue that Nelson's was a transferee, but rather argues that delivery to Nelson's was the equivalent of delivery to PennDOT. Because Barbera does not challenge the Commonwealth Court's finding that Nelson's was not a transferee, we need not address that issue.

Although Section 1374(b) does not provide a definition of relevant mitigating events, the Commonwealth Court has defined the term as "something that is beyond the control of the motor vehicle dealer, that is significant and of such a nature that it moderates and lessens the consequences of the late title submissions." *Philadelphia Honda,* 666 A.2d at 352.

In the present case, the Commonwealth Court held that Nelson's late submission of the title documents was "not beyond the control of [Barbera], since [Barbera] chose to contract with Nelson's to deliver title documents to [Penn-DOT] and could have monitored its performance." *Gary Barbera Dodge, Inc. v. Commonwealth, Department of Transportation, Bureau of Motor Vehicles,* 670 A.2d 1186, 1190 (Pa.Commw.1995).

However, although Nelson's is not an agent of PennDOT for the purpose of accepting title documents, it is an authorized messenger of PennDOT.[6] Authorized messengers which fail to comply with the Code or PennDOT regulations are subject to sanction. 75 Pa.C.S. §§ 7501–7506.[7] Specifically, Section 7503 provides:

(a) General rule.—The department shall supervise messenger services and, after providing an opportunity for a hearing, shall suspend the authorization of any messenger ser-

---

**6.** A messenger service is defined under 67 Pa.Code § 255.2 as "[a] person who, for a fee, advertises, offers or provides to the public the service of delivering and obtaining documents to and from the Department...."

Under 75 Pa.C.S. § 7501(a), "[t]he department shall authorize and shall issue a certificate of authorization to every messenger service that complies with the requirements of this chapter and regulations adopted by the department."

The criteria for obtaining a certificate of authorization are set forth in 75 Pa.C.S. § 7502, and include, among other things, the posting of a bond indemnifying the public and PennDOT in the amount of $50,000.

Authorized messenger services are entitled to "transact business with the department" pursuant to 75 Pa.C.S. § 7505.

**7.** 75 Pa.C.S. § 7506 provides:

Any person violating any provision of this chapter or the rules and regulations promulgated thereunder for which a specific penalty is not provided is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $100.

vice which it finds is not properly operated or which has violated or failed to comply with any of the provisions of this chapter or regulations adopted by the department. . . .

75 Pa.C.S. § 7503.

One obligation imposed upon a messenger service is that it submit documents in a timely fashion. 67 Pa.Code § 255.5(e) provides, in part:

> (e) Time limits. Messenger services shall submit documents to the Department within 5 days after the messenger's receipt of all necessary and fully executed documents. . . .

When Barbera gave the title documents to Nelson's within seven days of purchase, it reasonably assumed that Nelson's would comply with section 255.5(e) and deliver the documents within the requisite twenty-day period. Thus, Barbera was under no continuing obligation to monitor the delivery of the title documents once they were in the possession of Nelson's. Because Barbera had no continuing obligation to monitor the documents, once the documents were transferred to Nelson's, the timeliness of their delivery was beyond Barbera's knowledge or control. Accordingly, we disagree with the Commonwealth Court and find that Nelson's negligence in failing to deliver the documents within the prescribed period constituted a relevant mitigating event within the meaning of 75 Pa.C.S. § 1374(b).

For the foregoing reasons, the order of the Commonwealth Court is reversed in part and the case remanded to PennDOT so it may reconsider the imposition of sanctions.[8]

---

**8.** Barbera also claims that the Commonwealth Court erred in holding that the issue of the propriety of the penalty imposed by PennDOT was waived due to Barbera's failure to raise this issue before the trial court. Because we find that Nelson's failure to deliver the documents in a timely manner constitutes a relevant mitigating event, it is unnecessary to consider the propriety of the original penalty imposed by PennDOT.

The statute does not specify what penalty, if any, is appropriate where relevant mitigating events are found. Due to our finding of relevant mitigating events, PennDOT must now decide whether it is appropriate to impose a penalty, and if so, what the proper amount of the penalty should be, in light of the relevant mitigating circumstances.

ZAPPALA, J., files a dissenting opinion in which FLAHERTY, C.J., joins.

NEWMAN, J., did not participate in the consideration or decision of this case.

ZAPPALA, Justice, dissenting.

I agree with the majority that Barbera's delivery of the title documents to Nelson's was not equivalent to delivery of the documents to the Department for purposes of 75 Pa.C.S. § 1374(a)(5). I also agree that because Nelson's is an authorized messenger service required to comply with Department regulations regarding timely submission of documents, its failure to submit Barbera's title documents in a timely fashion constitutes a "relevant mitigating event" under § 1374(b) that should be considered in evaluating the charges that Barbera violated § 1374(a)(5). I dissent from the judgment, however, because I do not believe that a remand to the Department is necessary or appropriate.

The order imposing the penalty stated, "The Department has not found sufficient mitigating events which would warrant exoneration, or reduction of the penalty." R.5a. There is no record of whether Barbera argued that the messenger service's fault was a "relevant mitigating circumstance" or whether the Board gave any consideration to this theory. It is thus possible that the Department has already done what the Court is directing it to do on remand, i.e., "decide whether it is appropriate to impose a penalty, and if so, what the proper amount of the penalty should be, in light of the relevant mitigating circumstances." Majority opinion at 925, n. 8.

More importantly, Barbera's appeal was taken pursuant to 75 Pa.C.S. § 1377(a). That section provides that the court shall schedule a hearing "and thereupon take testimony and examine into the facts of the case and determine whether the petitioner is entitled to registration, subject to suspension of registration or other sanction under the provisions of this title or departmental regulations." As with driver's license suspension and revocation appeals under § 1550, the common pleas

court's consideration of the matter is de novo. It has long been understood that in such de novo appeals although the court should give due consideration to the Department's exercise of discretion in interpreting and applying the statute and regulations, it is not bound thereby. See *Commonwealth v. Emerick*, 373 Pa. 388, 96 A.2d 370 (1953). The Commonwealth Court thus erred in stating that "[t]he discretion to consider mitigating events is expressly granted to DOT, and DOT's decision on that question should not be reversed absent an abuse of that discretion." Commonwealth Court Memorandum Opinion at 1189–90.

After Barbera's witness had testified, counsel for the Department argued to the court that "although [Barbera's counsel] has explained the reason for the lateness, I don't believe that is a relevant mitigating event. . . ." The court then asked, "What would be a mitigating event if they are using a messenger service? Don't they have a right to rely upon DOT's licensing of the messenger service? If the person wasn't reliable and so on, one would think DOT wouldn't license them. . . ." R. 25a–26a. Later, in explaining its reasons for sustaining the appeal, the court stated

> I think we should emphasize the fact that the messenger service is licensed; that the cost of using the service is paid by the dealer . . . and hence increases the dealer's expense. The dealer ought to get something out of this, and one of the things they should get is the peace of mind that comes from knowing, if the darn stuff gets there late, its the messenger's fault, and DOT can easily suspend the messenger's license or hang the messenger out to dry as opposed to hanging the dealer out to dry.

R. 42a. Thus despite the court's erroneous conclusion that delivery to the messenger was tantamount to delivery to the Department, the record adequately indicates as an alternative basis for its ruling that the court considered the fact that the lateness was attributable to the messenger to be a relevant mitigating event.

For these reasons, I would hold that Commonwealth Court erred by applying the abuse of discretion standard to the

common pleas court's review of the Department's order imposing the penalty. Rather, the common pleas court's decision was subject to reversal only for abuse of discretion, error of law, or lack of substantial evidence. Having determined that the common pleas court did not commit an error of law in treating the messenger's delay as a relevant mitigating event, I would vacate the order of the Commonwealth Court and reinstate the order of the court of common pleas.

FLAHERTY, C.J., joins this Dissenting Opinion.