## Joseph T. LAMOND

### v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs July 31, 1998.

Decided Sept. 8, 1998.

As Amended Sept. 10, 1998.

Timothy P. Wile, Asst. Counsel In-Charge, and Harold H. Cramer, Asst. Chief Counsel, Harrisburg, for appellant.

Stephen David Ivey, Philadelphia, for appellee.

Before FLAHERTY and LEADBETTER, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issue before this Court is whether a breathalyzer's results, which varied by more than .02 percent and thus, was taken out of service according to the Department of Transportation's (DOT) regulations, is tantamount to a malfunctioning unit, allowing police officers to request a second chemical test from a suspected drunk driver.

DOT appeals from the order of the Court of Common Pleas of Montgomery County that sustained the appeal of Joseph T. Lamond from DOT's suspension of his driving privileges mandated by 75 Pa.C.S. § 1547(b)(1).[1] We reverse.

The facts are summarized as follows. On April 17, 1997, Abington Police Officer Shawn Williams stopped a dodge pickup truck driven by Lamond, after witnessing the vehicle swerve and cross the center line. Officer Williams observed a strong odor of alcohol coming from Lamond and placed him under arrest for driving under the influence (DUI).[2] Lamond was transferred to the Abington Police Station for a breath test.

---

**1.** Pursuant to Section 1547(b)(1) of the Vehicle Code, referred to as the "Implied Consent Law," DOT is required to suspend for one year the operating privilege of any individual whom a police officer has reported to have refused chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Scott,* 546 Pa. 241, 684 A.2d 539 (1996).

**2.** 75 Pa.C.S. § 3731(a) relates to driving under the influence of alcohol and/or a controlled substance.

At the station, Officer Williams informed Lamond that he was under arrest for DUI, provided him with the Implied Consent Law and *O'Connell*[3] warnings and asked Lamond to submit to a breath test. Lamond verbally consented to the testing and provided two breath samples into the breathalyzer. The first reading of the blood alcohol content (BAC) was 0.245 percent and the second BAC reading was 0.224 percent. Officer Williams, certified operator of the breathalyzer, aborted the test because Lamond's two breath samples varied by more than 0.02 percent. Such variation requires the breathalyzer to be taken out of service in accordance with DOT regulations. 67 Pa.Code §§ 77.24(b)(2)(i) and 77.25(b)(4). Officer Williams explained to Lamond that the test results were not valid because of the deviation between the two readings and that he would have to provide additional samples for testing. Officer Williams gave Lamond the option of taking either a breath test at Upper Moreland Police Department or blood test at the local hospital. Lamond refused to provide any additional samples.

Officer Williams considered this a refusal and notified DOT that Lamond had refused to submit to chemical testing. DOT notified Lamond that his operating privileges would be suspended for one year. Lamond filed a statutory appeal.

Following a de novo hearing, the trial court announced from the bench the following findings which are summarized as follows:

*Officer Williams had sufficient "probable cause" to stop and arrest Lamond for driving under the influence (56a).

*Lamond was provided with Implied Consent Law warnings at the police station and acknowledged that he understood those warnings by signing a copy of the written form (57a).

*Lamond was asked to submit to a breath test and asked to provide two samples (57a).

*Lamond did provide two separate samples for the breath test and did so willingly, without any chicanery and without coercion or hesitation on his part (57a).

*The breath testing machine, an Intoximeter® IC/ER, indicated that it was outside of parameters and that the applicable regulations require that the test results be disregarded (57a–58a).

*There was no evidence to support the conclusion that the Intoximeter® IC/ER was in fact broken, but there was evidence that this particular machine was submitted to the manufacturer for recalibration and ultimately returned to the Abington Police Department (58a).

*After the first test was performed, Lamond was asked to submit to a second test, in response to which Lamond asked to speak with a lawyer or see the statute which required a second test (58a–59a).

*Lamond refused to submit to the second test, despite being warned several times that a refusal to do so would result in the automatic suspension of his operating privilege for one year (R.59a).

Based upon these findings and the trial court's interpretation of *Department of Transportation v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987), it sustained Lamond's statutory appeal.

On appeal to this Court,[4] DOT argues that the trial court erred in holding that Officer Williams lacked the authority to require Lamond to submit to an additional chemical test. Because the first test performed upon Lamond varied by more than 0.02 percent, requiring the breathalyzer to be taken out of service, DOT asserts Officer Williams had reasonable grounds to request a second test. Thus, DOT states that the

**3.** *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), requires police officers under certain conditions to inform licensees arrested for DUI and asked to submit to chemical testing that *Miranda* rights are not applied to the chemical testing procedure.

**4.** This Court's scope of review is limited to ascertaining whether necessary findings of fact are supported by substantial evidence and determining whether the trial court committed an error of law or manifestly abused its discretion. *Gary Barbera Dodge, Inc. v. Department of Transportation, Bureau of Motor Vehicles,* 549 Pa. 100, 700 A.2d 922 (1997).

sole issue to be resolved by this Court is whether a police officer has "reasonable grounds" to request that a licensee submit to a different or additional chemical test where the BAC results of the licensee's breath test deviated by more than 0.02 percent.

The trial court ruled that under *McFarren,* police may only require a licensee who has provided the necessary sufficient breath samples for a breath test, to submit to another chemical test where the police establish that the breathalyzer was in fact broken or malfunctioning. Here, the trial court specifically found that there was no evidence to support a conclusion that the breathalyzer was in fact broken, but only that the machine was sent to the manufacturer for recalibration. DOT argues that it did present evidence of malfunction. DOT contends that where a breathalyzer yields BAC results that deviate by more than 0.02 percent and is taken out of service, such circumstances demonstrate malfunction of the unit and provide sufficient justification under *McFarren,* for police to require the licensee to submit to additional testing. We must agree.

The breathalyzer itself realizes when it malfunctions, by noting a deviation by more than 0.02 percent. This fact, recognized in 67 Pa.Code §§ 77.25(b)(2)(i) and 77.25(b)(4), requires that when such deviation occurs, the breathalyzer must be taken out of service. In *Bonise v. Department of Transportation,* 102 Pa.Cmwlth. 6, 517 A.2d 219 (1986), this Court upheld the suspension of a licensee's operating privilege under circumstances quite similar to those present here. There, the licensee supplied two breath samples that yielded BAC readings of 0.153 and 0.133, respectively. The officer administering the breath test concluded that the results were invalid and asked the licensee to submit to another test at another police station or a blood test at a hospital.

In rejecting the licensee's claim to have completed the breath test, this Court held that:

> To constitute a breath test under the regulations, two elements must be present, namely, two consecutive breath tests without a required waiting period between the two tests, and a reading wherein the dif-

ference between the two tests is less than .02. Unless both elements are present, there is no test. Here, the second element was missing, so that in effect no test was given. Thus, when appellant did not consent to go to another station, it could reasonably be inferred as an unqualified refusal.

*Id.* 517 A.2d at 220.

Lamond claims that this case is controlled by *Light v. Department of Transportation, Bureau of Driver Licensing,* 692 A.2d 652 (Pa.Cmwlth.1997). *Light* is instructive but does not require this Court to affirm the trial court. In *Light,* this Court remanded to the trial court for a finding of whether the breathalyzer had malfunctioned, and thus, would permit the arresting officer's request that the licensee submit to a second chemical test. While the trial court in *Light* did not make a finding regarding the breathalyzer's status, the trial court here found that the breathalyzer did not malfunction. As stated previously, this finding is not supported by the evidence. Officer Williams, a certified breathalyzer operator, testified to the test results, which deviated beyond the norm, requiring him to remove the breathalyzer from service. Requiring the machine to be removed from service cannot be considered anything but a malfunction, as the Code describes.

While requesting a licensee to submit to additional testing may at first blush seem invasive, because of the purpose of the Implied Consent Law, to protect the public, see *Occhibone v. Department of Transportation, Bureau of Driver Licensing,* 542 Pa. 588, 669 A.2d 326 (1995), such invasion is secondary to the purpose of the law. The Code's protection of removing the breathalyzer from service protects all parties. If Lamond would have permitted additional testing, it is possible that the test would have demonstrated that he was not intoxicated.

In view of the fact that the BAC readings on Lamond's two breath samples deviated by 0.021%, outside of the acceptable range of deviation set by 67 Pa.Code 77.24(b)(2)(I), the test results were invalid and, under *Bonise,* there was in effect no breath test. At that point, Lamond had not satisfied the

obligation place upon him by 75 Pa.C.S. § 1547 and Officer Williams was justified to require him to provide another sample of breath, blood or urine for testing. *Bonise.* Because the trial court found that Lamond failed to consent to provide that additional sample, (58a–59a), Lamond's failure to consent to an additional breath test or blood test constituted an unqualified refusal.

Because there is evidence that the machine malfunctioned, under *McFarren,* and because Officer Williams had reasonable justification for requesting that Lamond submit to additional chemical testing under *Bonise,* we hold that the trial court erred in sustaining Lamond's appeal.

Accordingly, we reverse.

## ORDER

AND NOW, this 8th day of September, 1998, the order of the Court of Common Pleas of Montgomery County in the above-captioned matter is hereby reversed.

FLAHERTY, J., dissents.