Patrick B. KARABINOS

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 30, 1999.

Decided Sept. 2, 1999.

Reconsideration Denied Nov. 10, 1999.

Bryan S. Neiderhiser, Asst. Counsel, and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for appellant.

John Elash, Pittsburgh, for appellee.

Before DOYLE, J., PELLEGRINI, J., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

The Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT) appeals from an

order of the Court of Common Pleas of Allegheny County sustaining the statutory appeal of Patrick B. Karabinos from DOT's suspension of his operating privileges pursuant to section 1547(b)(1) of the Vehicle Code.[1]

On July 30, 1998, Officer Ronald Dziezgowski of the Bethel Park Police Department observed a vehicle driven by Karabinos swerve twice into an oncoming traffic lane. Based on his observations, Officer Dziezgowski stopped the vehicle, engaged the driver in conversation and noticed that his speech was slurred, that his eyes were glassy and that his breath smelled of alcohol. Officer Dziezgowski, therefore, asked Karabinos to perform several field sobriety tests, which he failed. Based on Karabinos' unsatisfactory performance of the tests, Officer Dziezgowski arrested Karabinos for driving under the influence of alcohol and transported him to the police station for a breathalyzer test.

At the station, Officer Dziezgowski read the Implied Consent Law warnings to Karabinos and asked him to submit to a breathalyzer test.[2] Karabinos consented and supplied two breath samples. The breathalyzer operator, Officer James E. Linz, recorded a reading of .116 for the first sample and a reading of .139 for the second sample. Officer Linz concluded that the results were invalid because the deviation between the two readings exceeded the statutory .020 deviation limit set out in 67 Pa.Code § 77.24(b)(2)(i).[3] Officer Linz then informed Officer Dziezgowski of the invalid .023 deviation and that an alternative chemical test was required. Officer Dziezgowski advised Karabinos of the Implied Consent warnings for a second time and then asked Karabinos to submit to a chemical test of his blood. At no time, however, did either officer tell Karabinos why a second chemical test was requested. Karabinos declined to provide a blood sample, and Officer Dziezgowski recorded a refusal.

As a result of his refusal, DOT notified Karabinos that his driving license would be suspended for one year. From that suspension, Karabinos appealed to the Court of Common Pleas of Allegheny County. Following a hearing, the Court of Common Pleas concluded that Karabinos' refusal to submit to blood testing was excusable because the officers failed to inform him of the reason necessitating a second chemical test.[4] Based on that conclusion, the Court of Common Pleas sustained Karabinos'

1. 75 Pa.C.S. § 1547(b)(1), provides:
   If any person placed under arrest for violation of section 3731 (relating to driving under influence of alcohol or controlled substance) is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person for a period of 12 months.
   75 Pa.C.S. § 1547(b)(1).

2. Police officers must inform licensees who are requested to submit to chemical testing pursuant to the Implied Consent Law that "his driving privileges will be suspended for one year if he refuses chemical testing [and] that his *Miranda* rights do not apply to chemical testing." *Commonwealth of Pennsylvania, Department of Transportation v. Ingram*, 538 Pa. 236, 648 A.2d 285, 294–95 (1994).

3. 67 Pa.Code § 77.24(b)(2) provides, in part: The test results will be disregarded, and the breath test device will be removed from service under § 77.25(b)(4) (relating to accuracy inspection tests for Type A equipment) if one of the following occurs:
   (i) If the difference between the results of the two actual alcohol breath tests is .02 or more, for machines read to the second decimal place, or .020 or more for machines read to the third decimal place.
   67 Pa.Code § 77.24(b)(2).

4. The parties agree that Karabinos received adequate *O'Connell* warnings. The parties contest, however, whether Karabinos was informed of the reason a second test was requested. DOT urges us to overturn the trial court's factual finding that Officer Dziezgowski did not inform Karabinos about the breathalyzer malfunction. Our review of the record indicates, however, that neither Officer Dziezgowski nor Officer Linz testified that Karabinos was informed of the malfunction and, therefore, the trial court's factual finding was absolutely correct.

statutory appeal, and DOT's appeal to this Court followed.

■ On appeal to this Court,[5] DOT argues that it met its burden of proving that Karabinos refused to submit to chemical testing.[6] Specifically, DOT argues that Officer Dziezgowski had reasonable cause to ask Karabinos to submit to a second chemical test and that, when he requested the second test, Officer Dziezgowski was not obligated to inform Karabinos that the results of the initial breathalyzer test were invalid.

Section 1547(a) of the Vehicle Code, commonly known as the Implied Consent Law, provides:

> Any person who drives, operates or is in actual physical control of the movement of a motor vehicle in this Commonwealth shall be deemed to have given consent to **one or more** chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood....

75 Pa.C.S. § 1547(a) (emphasis added).

In *Department of Transportation v. McFarren*, 514 Pa. 411, 525 A.2d 1185 (1986), the Supreme Court had occasion to examine Section 1547(a). As in the present case, the licensee in *McFarren* complied with an initial request for a breathalyzer test. But after providing two breath samples, he was asked to submit to a second breathalyzer test, and refused. The Supreme Court held that the police may only request a second test under certain circumstances, such as when a licensee failed to provide sufficient breath sam-

ples or equipment malfunction produced inconclusive results. In such a case, the "police officer must offer sufficient evidence to establish the 'reasonableness' of such a request." The Supreme Court further held that it was not reasonable for an officer to request a second test for the sole purpose of substantiating the accuracy of the first test.

■ This Court interpreted *McFarren* in *Department of Transportation, Bureau of Driver Licensing v. Penich*, 112 Pa.Cmwlth. 303, 535 A.2d 296 (1988), as follows:

> [A] police officer with reasonable grounds to believe a licensee was operating a vehicle while under the influence initially has unfettered discretion under Section 1547(a) to request the licensee to submit to **one** of the following types of chemical tests: breath, blood, or urine. Once the police officer selects the **type** of test to be administered, however, his or her discretion is curbed.... [*McFarren*] requires a reasonable reason whenever a police officer requests a licensee to submit to a different type of chemical test other than the one originally chosen and administered.... Reasonability, of course, is a question of law for the court to decide based upon the unique facts in each case.

*Id.* at 298 (footnotes omitted) (emphasis in original). Therefore, as a general rule, an officer may request a second chemical test only when problems with the first test or other special circumstances [7] make the second request reasonable.

---

**5.** In a license suspension case, our standard of review is limited to determining whether the trial court made findings unsupported by competent evidence, committed an error of law, or abused its discretion. *Department of Transportation v. Renwick*, 543 Pa. 122, 669 A.2d 934 (1996).

**6.** In a license suspension appeal, DOT bears the burden to establish that the motorist (1) was arrested for driving under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was specifically warned that a refusal would

result in the revocation of her driving license. *Department of Transportation v. O'Connell*, 521 Pa. 242, 248–49, 555 A.2d 873, 876 (1989).

**7.** An officer can reasonably request a different type of chemical test, if a licensee's behavior or appearance indicates that the licensee might be under the influence of a substance which the first mode of testing could not detect. *Matthews v. Commonwealth*, 115 Pa. Cmwlth. 403, 540 A.2d 349 (1988).

DOT relies on this Court's decision in *Lamond v. Department of Transportation, Bureau of Driver Licensing*, 716 A.2d 1290 (Pa.Cmwlth.1998), to support its position that Officer Dziezgowski's request for a second chemical test was reasonable. Just as in the present case, the licensee in *Lamond* complied with a breathalyzer test, but the results were inconclusive because the deviation between the two required samples exceeded the permissible limit, and the licensee refused to consent to a second chemical test. We noted that a completed breathalyzer test includes two elements:

'[N]amely, two consecutive breath tests without a required waiting period between the two tests, and a reading wherein the difference between the two tests is less than .02. Unless both elements are present, there is no test.'

*Id.* at 1292 (quoting *Bonise v. Department of Transportation*, 102 Pa.Cmwlth. 6, 517 A.2d 219, 220 (1986)). Because the second element was not satisfied, we held that the officer was reasonably justified in asking the licensee to submit to a second chemical test. Similarly, in the present case, the breath test results were invalid, which gave Officer Dziezgowski reasonable justification to ask Karabinos to submit to a second chemical test.

However, the precise issue raised in this appeal is not whether the police officer has authority to require a driver to submit to a second test under certain circumstances, but whether, if those circumstances exist, the officer must inform the driver of such a fact. DOT's reliance on *Lamond*, in this respect, is misplaced because when the officer asked the licensee to consent to a second test in that case, he did explain to the licensee that the first results were invalid because of an impermissible deviation in the breathalyzer readings.[8] In essence, Lamond was informed that he had not fulfilled his obligation under the Implied Consent Law, whereas here, Karabinos was **not** provided with this information. The question of first impression remains, therefore, whether an officer is obligated to inform a licensee **why** a second test is requested in order to dispel the licensee's possible, and reasonable, subjective belief that he fulfilled his obligation under the Implied Consent Law by complying with an initial chemical test.

We hold today that the licensee must be so informed because a licensee, knowing that a police officer may only request one test if it is a valid test, may well believe that he has adhered to the law's requirements and that he has a right to refuse a second request. Only if the licensee is informed why a second test is requested, is he prepared to make that vital decision to comply with the test or to refuse. Because a licensee may lawfully refuse a request for a second test, unless the licensee is informed of the reason why that right is no longer valid, he has not been provided an opportunity to give his informed consent to the request.[9]

For these reasons, we conclude that an officer who requests a licensee to submit to a second chemical test is obligated, under the Implied Consent Law, to inform the licensee that the initial chemical test did not produce valid results. Because Officer Dziezgowski did not explain to Karabinos that the breathalyzer test failed to

---

8. We recognize that this Court also found a refusal, under similar facts, in *Bonise*. However, the issue of whether the officer informed the licensee of the malfunction in the initial test was neither raised by the parties nor addressed by this Court.

9. We believe that this conclusion comports with our Supreme Court's recent decision in *Millili v. Department of Transportation, Bureau of Driver Licensing*, 556 Pa. 115, 727

A.2d 120, (1999). In *Millili*, the licensee refused to consent to either a urine or blood test when an officer requested both. Because the licensee refused to submit to either test, the Court concluded that he violated the Implied Consent Law. The present case is distinguishable in that Karabinos did submit to a chemical test of his breath, before declining a subsequent request for a blood test.

yield valid results, Karabinos could have reasonably believed that he had already complied with the Implied Consent Law by providing a breath sample. Therefore, Karabinos' refusal to submit to a blood test was excusable, and DOT's suspension of his license was improper.

Accordingly, the order of the Court of Common Pleas is affirmed.

### ORDER

NOW, September 2, 1999, the order of the Court of Common Pleas of Allegheny County in the above-captioned matter is hereby affirmed.