**Callaghan v. PennDOT**

C.P. of Carbon County, no. 04-3254.

*Cynthia S. Ray,* for appellant.
*Robert Kopacz,* for appellee.

NANOVIC, *P.J.,* April 21, 2005—By order dated February 23, 2005, we denied appellant's, Gerald T. Callaghan Jr.'s, statutory appeal from the one-year suspension of his operating privileges pursuant to section 1547(b)(1) of the Vehicle Code.[1] Appellant has filed an appeal from this decision thereby requiring the preparation of this opinion in accordance with Pa.R.A.P. 1925(a).

FACTUAL AND PROCEDURAL BACKGROUND

On June 1, 2004, at approximately 11:40 p.m., appellant was stopped by Officer David Mason of the Kidder Township Police Department for suspicious driving. Following this stop, Officer Mason requested Officer Austin Bott of the same police department to take over the investigation of appellant.

Officer Bott testified that both he and Officer Mason had arrived at the scene in separate cruisers to investigate a domestic dispute, that while leaving he observed appellant's vehicle blocking the west-bound lane of traffic on Route 534 at which time Officer Mason activated the emergency lights of his patrol car, and that he observed appellant fumble through his wallet trying to locate his driving license, and also saw appellant stagger as he ex-

---

1. Pursuant to section 1547(b)(1) of the Vehicle Code, referred to as the Implied Consent Law, the Department of Transportation is required to suspend for one year the operating privilege of any individual whom a police officer has reported to have refused chemical testing.

ited his vehicle. It was at this point that Officer Bott continued with the investigation begun by Officer Mason. (N.T., pp. 4-6.)

Officer Bott administered three sobriety tests to appellant—the horizontal gaze nystagmus test, walking a straight-line heel to toe, and the one-leg stand—all of which appellant failed. (N.T., pp. 7-10.) Appellant was then advised by Officer Bott that he was under arrest for driving under the influence, that a chemical test of his blood was requested and that, if he refused, his driving privileges would be suspended for a period of one year. (N.T., p. 10.) En route to the Hazelton General Hospital where the blood was to be withdrawn, appellant advised Officer Bott that he would not submit to a blood test but would agree to a breath test. Officer Bott then contacted the state police barracks in Lehighton, and, when advised that an operator was available to conduct a breathalyzer test, as an accommodation to appellant, changed route and drove the appellant to the Lehighton barracks.

At the barracks, appellant was sitting beside the breathalyzer test machine as the operator was readying the machine for testing. While the operator was in the process of setting up the machine, and before being requested to do so, appellant grabbed the mouthpiece, at which point the machine shut down before appellant provided, or even attempted to provide, any sample of his breath.[2] (N.T., pp. 12-13, 16-19.) After this shutdown,

_____

2. 67 Pa. Code §77.24(b)(1) provides in pertinent part that the procedure for alcohol breath testing shall include, at a minimum, two consecutive actual breath tests, without a required waiting period between the two tests.

the machine would not accept a breath sample. (N.T., p. 13.)

Because of this malfunction, Officer Bott advised appellant that a blood test would be required. (N.T. p. 14.) Appellant again advised Officer Bott that because of his fear of needles, he would not submit to a blood test. At 12:38 a.m. on June 2, 2004, Officer Bott read PennDOT form DL-26 verbatim to appellant, the *O'Connell* warnings. (N.T., pp. 13-15, 17; Commonwealth exhibit no. 1, document 2, "Chemical testing warnings".) Notwithstanding these warnings, appellant remained steadfast in his refusal to submit to a chemical test of his blood, which refusal forms the basis of the suspension of appellant's operating privileges appealed by appellant.

## DISCUSSION

On appeal, appellant argues that this case is controlled by *Karabinos v. PennDOT,* 739 A.2d 601 (Pa. Commw. 1999). In *Karabinos* the court recognized prior case law which held that the police have authority to request a driver to submit to a second chemical test when problems with the first test exist, or under other special circumstances which make the second request reasonable. "Reasonability is a question of law for the court to decide based upon the unique facts of each case." *PennDOT v. Harbaugh,* 141 Pa. Commw. 288, 294-95 n.6, 595 A.2d 715, 718 n.6 (1991).[3] As a matter of first impression, the

___

3. In *PennDOT v. Harbaugh,* 141 Pa. Commw. 288, 595 A.2d 715 (1991), the Commonwealth Court stated:

"In *PennDOT v. McFarren,* 514 Pa. 411, 417, 525 A.2d 1185, 1188 (1987), a plurality opinion, our Supreme Court stated the following regarding the propriety of administering a second chemical test:

court in *Karabinos* further held that when a driver is requested to take a different type of chemical test, other than the one originally chosen and previously administered, the driver must be advised of the reason for the second test "in order to dispel the licensee's possible, and reasonable, subjective belief that he fulfilled his obligation under the Implied Consent Law by complying with an initial chemical test." *Id.* at 604.

The facts in *Karabinos* are easily distinguishable from those in the present case. In *Karabinos,* a breathalyzer test was in fact conducted and two breath samples submitted, however, the results were determined by the breathalyzer operator to be invalid because the deviation in the readings between the two breath samples exceeded the statutory .020 deviation limit set forth in 67 Pa. Code §77.24(b)(2)(i). Karabinos' subsequent refusal to submit to a chemical test of his blood was determined by the Commonwealth Court to be excusable since Karabinos, who had previously been administered a breathalyzer test, was not informed of the reason necessitating a second chemical test.

In contrast to *Karabinos,* in the present case, appellant was never fully administered a breathalyzer test. Prior

---

"In order to justify a second intrusion, the police officer must establish circumstances which support the reasonableness of a second search . . . . *A second test may be proper if the first test was inconclusive due to faulty equipment or faulty performance by the individual.* (emphasis added)

"Thus, when a motorist has already submitted to and performed a valid chemical test, his failure to perform a second chemical test is not a refusal to submit to chemical testing within the meaning of section 1547(b). *PennDOT v. Fellmeth,* 108 Pa. Commw. 172, 528 A.2d 1090 (1987)." *Id.* at 293-94, 595 A.2d at 717-18.

to any breath samples being provided by the appellant, or appellant even being requested to provide a breath sample, appellant grabbed the mouthpiece and the machine shut down. Appellant was never requested to provide, and never did provide, a breath sample before the machine shut down. While the scientific basis or technical reason for why the machine shut down may well have required expert testimony, the fact that it shut down was an observation Officer Bott was capable of making and one which he in fact did make. (N.T., pp. 12-13.)

In this case, the malfunction which justified Officer Bott's request that appellant submit to blood testing was necessarily known to appellant. Moreover, before declining a subsequent request for a blood test, appellant never provided a breath sample capable of being tested, a fact of which appellant was unquestionably aware. For appellant to argue, on the basis of *Karabinos,* that he reasonably and subjectively believed that he fulfilled his obligation under the Implied Consent Law by agreeing to submit to a breath test for which no samples were taken, and for which the machine malfunctioned, is both implausible and incredulous.

Because a valid chemical test was never performed, Officer Bott's subsequent request for appellant to submit to a blood test was clearly justified, and appellant's failure to submit to this testing constituted a refusal. *PennDOT v. McFarren,* 514 Pa. 411, 417-18, 525 A.2d 1185, 1188 (1987). Because appellant was aware that a breath test—although earlier agreed to by Officer Bott and for which preparatory steps were begun—was never actually performed, the reasonableness of Officer Bott's request was apparent and appellant's refusal to submit

to the blood test was not excusable. *Karabinos,* 739 A.2d at 603. We hold, therefore, that where a driver agrees to submit to one type of chemical test which is unable to be completed for reasons apparent to the driver, a police officer—who has, immediately preceding a request for a second chemical test, reminded the driver of the *O'Connell* warning—is not required as a further precondition to the driver's informed consent to additionally advise the driver of the reasons for requesting the second chemical test.

## CONCLUSION

Under the facts of this case, appellant's refusal to submit to a blood test cannot be excused on the basis of *Karabinos* and the suspension of his operating license by PennDOT was proper. Accordingly, we respectfully request that our order of February 24, 2005, denying appellant's license suspension appeal be affirmed.[4]

---

4. Appellant's argument that the *O'Connell* warnings provided to him by Officer Bott prior to his refusal of the blood test were in some manner defective was neither raised at the time of the hearing on appellant's statutory appeal, nor in appellant's brief in support of his license suspension appeal, and has been waived. Moreover, the undisputed testimony at the time of hearing was that Officer Bott read the *O'Connell* warnings to appellant verbatim from form DL-26. (N.T., pp. 13-15; Commonwealth exhibit no. 1, document 2.)