# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Elijah Wilcox | : |
| | : |
| v. | : No. 128 C.D. 2017 |
| | : Submitted: June 2, 2017 |
| Commonwealth of Pennsylvania, | : |
| Department of Transportation, | : |
| Bureau of Driver Licensing, | : |
| | : |
| Appellant | : |

BEFORE:    HONORABLE ROBERT SIMPSON, Judge
            HONORABLE MICHAEL H. WOJCIK, Judge
            HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                    FILED:  July 13, 2017


The Department of Transportation, Bureau of Driver Licensing (Bureau) appeals the December 29, 2016 order of the Court of Common Pleas of Philadelphia County (trial court) that sustained Elijah Wilcox's (Licensee) statutory appeal from a 12-month suspension of his operating privilege imposed by the Bureau under Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(i), based on his refusal to submit to a chemical breath test.[1]  We reverse.

---

[1] Commonly known as the "Implied Consent Law," Section 1547 of the Vehicle Code states in part as follows:

> (a) General rule.-Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one

**(Footnote continued on next page…)**

By notice mailed April 18, 2016, the Bureau informed Licensee that his driving privilege would be suspended for 12 months, effective May 23, 2016, based on his refusal to submit to chemical testing on March 20, 2016. Licensee timely appealed to the trial court, which conducted a *de novo* hearing on October 12, 2016.

At the hearing, Pennsylvania State Police Trooper Brett Trego (Trooper Trego) testified for the Bureau, and his testimony may be summarized as follows. At 3:00 a.m. on March 20, 2016, Licensee was traveling westbound on the Schuylkill Expressway (Interstate 76) near the Montgomery Drive interchange in Philadelphia County. Observing that Licensee was tailgating another vehicle, veering into the left shoulder, and traveling at approximately 76 miles-per-hour in

---

**(continued…)**

> or more chemical tests of breath, blood or urine for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle:
>
> (1) in violation of section … 3802 (relating to driving under influence of alcohol or controlled substance) . . . ;
>
>       \*     \*     \*
>
> (b) Suspension for refusal.-
>
> (1) If any person placed under arrest for a violation of section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted but upon notice by the police officer, [the Bureau] shall suspend the operating privilege of a person as follows:
> (i)…for a period of 12 months.

75 Pa. C.S. §1547(a)(1), (b)(1)(i).

a 50 mile-per-hour zone, Trooper Trego initiated a traffic stop. When he approached Licensee's vehicle, Trooper Trego detected a strong odor of alcohol and noticed that Licensee had glassy, bloodshot eyes and slurred speech. Trooper Trego then instructed Licensee to exit the vehicle to perform field sobriety tests.

Trooper Trego administered three field sobriety tests: the horizontal gaze nystagmus, the walk and turn, and the one-leg stand, which Licensee did not complete in a satisfactory manner. Trooper Trego then administered a prearrest breathalyzer test (PBT),[2] and the results suggested a blood alcohol concentration (BAC) of 0.17, more than double the legal limit.[3] Based on the results of the field sobriety tests and the PBT, Trooper Trego placed Licensee under arrest for driving under the influence of alcohol.

Trooper Trego transported Licensee to the nearby state police barracks and asked him to submit to a post-arrest breathalyzer test. Trooper Trego

---

[2] Section 1547(k) of the Vehicle Code provides:

> Prearrest breath test authorized:–A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person *prior to arrest* to submit to a preliminary breath test on a device approved by the Department of Health for this purpose. *The sole purpose of this test is to assist the officer in determining whether or not the person should be placed under arrest . . . Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).*

75 Pa. C.S. §1547(k) (emphasis added).

[3] Section 3802(a)(2) of the Vehicle Code, 75 Pa. C.S. §3802(a)(2), sets the BAC threshold for driving under the influence at 0.08.

read the DL-26 form[4] to Licensee, explained the consequences of refusing chemical testing, and provided Licensee a copy of the DL-26 Form for review. Licensee refused to sign the form and stated that the PBT he had already taken was

[4] Form DL-26 contains the implied consent warnings required by Section 1547 of the Vehicle Code and the Supreme Court's decision in *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 555 A.2d 873 (Pa. 1989). The form advises police officers to read the following warnings in their entirety to a motorist:

> 1. You are under arrest for driving under the influence of alcohol or a controlled substance in violation of Section 3802 of the Vehicle Code.
>
> 2. I am requesting that you submit to a chemical test of [Breath] (blood, breath, or urine. The arresting officer chooses the chemical test).
>
> 3. If you refuse to submit to the chemical test your operating privilege will be suspended for at least 12 months. If you previously refused a chemical test or were previously convicted of driving under the influence, you'll be suspended for up to 18 months. In addition, if you refuse to submit to the chemical test and you're convicted of violating Section 3802(a)(1) (relating to impaired driving) of the Vehicle Code, then, because of your refusal, you will be subject to more severe penalties set forth in Section 3804(c) (relating to penalties) of the Vehicle Code. **These are the same penalties that would be imposed if you were convicted of driving with the highest rate of alcohol, which include a minimum of 72 consecutive hours in jail and a minimum fine of $1,000.00, up to a maximum of five years in jail** and a maximum fine of $10,000.00.
>
> 4. You have no right to speak with an attorney or anyone else before deciding whether to submit to the testing. If you request to speak with an attorney or anyone else after being provided these warnings or you remain silent when asked to submit to chemical testing, you will have refused the test.

Certified Record Exhibit A. The form includes spaces for the police officer and licensee to add their signatures, respectively acknowledging that the officer read the warning to the licensee.

4

sufficient. Trooper Trego deemed Licensee's conduct a refusal to submit to chemical testing.

In relevant part, Licensee testified that he had difficulty completing the PBT and had to attempt it three times in order to get a reading. Licensee stated that he has asthma and that he informed Trooper Trego of this fact while he was taking the PBT. Licensee said that when Trooper Trego asked him to take a second breath test at the barracks, he again told Trooper Trego about his asthma and said that he was not willing to take the post-arrest breathalyzer test because he was having problems breathing.

When recalled as a witness, Trooper Trego did not remember any discussion regarding Licensee's asthma. Trooper Trego said it was possible that Licensee mentioned it but that many people have difficulty with the PBT and require multiple attempts to register a reading, so that any breathing difficulty Licensee may have had before, during, or after the PBT would not have seemed abnormal. Trooper Trego testified that based on his observations, Licensee was able to blow into the PBT and provide a sample sufficient for a reading. Additionally, Trooper Trego testified that if Licensee had mentioned having a respiratory ailment that would preclude him from completing the post-arrest breathalyzer test, he would have asked Licensee to submit to a blood test.

The trial court noted that to sustain the appeal of a license suspension under Section 1547 of the Vehicle Code, the Bureau bears the burden to prove that: (1) the driver was arrested for driving under the influence of alcohol; (2) the driver was asked to submit to a chemical test; (3) the driver refused to take the chemical test; and (4) the driver was specifically warned that refusing the test would result in the revocation of his or her driver's license. *O'Connell*, 555 A.2d at 876. Once

5

the Bureau meets its burden, the burden shifts to the driver to prove that he or she was physically incapable of taking the chemical test or that the refusal was not knowing or conscious. *Kollar v. Department of Transportation, Bureau of Driver Licensing*, 7 A.3d 336, 339 (Pa. Cmwlth. 2010).

The trial court credited Licensee's testimony and found as fact that he disclosed his asthma to Trooper Trego prior to the request for the post-arrest breathalyzer test. The trial court determined that the Bureau satisfied the first three prongs of the *O'Connell* test but that Licensee could not have knowingly refused the post-arrest breathalyzer test or heeded Trooper Trego's warnings because he had a reasonable subjective belief that his completion of the PBT and his asthma gave him adequate reason to refuse the test. Relying on *Karabinos v. Department of Transportation, Bureau of Driver Licensing*, 739 A.2d 601 (Pa. Cmwlth. 1999), the trial court concluded that the Bureau could not satisfy the fourth prong of the *O'Connell* test because Trooper Trego did not inform Licensee why a second test was being requested. Accordingly, the trial court held that the Bureau did not meet its burden under Section 1547(b)(1) and sustained Licensee's appeal.

On appeal to this Court,[5] the Bureau argues that the trial court erred in relying on *Karabinos* to conclude that the Bureau did not meet its burden to prove a refusal under Section 1547(b)(1) of the Vehicle Code. We agree.

---

[5] Our scope of review is limited to determining whether the trial court's necessary findings are supported by substantial evidence and whether the trial court committed an error of law or abused its discretion. *Martinovic v. Department of Transportation, Bureau of Driver Licensing*, 881 A.2d 30, 34 n.6 (Pa. Cmwlth. 2005). As the fact finder, the trial court makes the necessary credibility determinations and may accept or reject the testimony of any witness in whole or in part; its determinations in this regard are not subject to our review. *Finney v. Department of Transportation, Bureau of Driver Licensing*, 721 A.2d 420, 423 (Pa. Cmwlth. 1998). The issue of whether a licensee has refused a chemical test is a question of law, subject to

**(Footnote continued on next page…)**

In *Karabinos*, the licensee was stopped by police on suspicion of driving under the influence; he failed several field sobriety tests and was placed under arrest. The licensee consented to a breathalyzer test at the police station, but the breathalyzer operator concluded the deviation between the two readings rendered the results invalid. Thereafter, the police again provided the licensee with the implied consent warnings and asked him to submit to a blood test. The licensee was not told why a second test was requested and refused the blood test. The Bureau notified the licensee that his operating privilege would be suspended for twelve months based on that refusal. The licensee appealed to common pleas court, which sustained the appeal, concluding that his refusal to submit to a blood test was excusable because the police failed to inform him of the reason a second test was necessary. We affirmed and held that "an officer who requests a licensee to submit to a second chemical test is obligated under the Implied Consent Law to inform the licensee that the initial chemical test did not produce valid results." *Id.* at 604.[6]

---

**(continued…)**

plenary review by an appellate court. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 723 A.2d 655, 658 n.2 (Pa. 1999).

[6] In doing so, we explained that a police officer with reasonable grounds to believe a licensee was operating a vehicle while under the influence

> initially has unfettered discretion under Section 1547(a) to request the licensee to submit to **one** of the following types of chemical tests: breath, blood, or urine. Once the police officer selects the **type** of test to be administered, however, his or her discretion is curbed. . . .[*Department of Transportation v. McFarren*, 525 A.2d 1185 (Pa. 1986)] requires a reasonable reason whenever a police officer requests a licensee to submit to a different type of chemical test other than the one originally chosen and administered . . . .

**(Footnote continued on next page…)**

The facts in *Karabinos* are significantly distinguishable, as the licensee in that case consented to a post-arrest breathalyzer test pursuant to Section 1547(b) at the police station after he failed field sobriety tests and was placed under arrest. Licensee only consented to a PBT prior to arrest under Section 1547(k); he did not consent to chemical testing after arrest.

Moreover, we have repeatedly rejected the trial court's rationale. *See e.g.*, *Sitoski v. Department of Transportation, Bureau of Driver Licensing*, 11 A.3d 12, 20 (Pa. Cmwlth. 2010) (the completion of a PBT does not satisfy the chemical testing requirements of Section 1547(a)(1) of the Vehicle Code); *Gregro v. Department of Transportation, Bureau of Driver Licensing*, 987 A.2d 1264, 1268 (Pa. Cmwlth. 2010) ("agreeing to a [PBT] does not satisfy the requirement to submit to chemical testing for which a refusal does result in a suspension"); and *Ryan v. Department of Transportation, Bureau of Driver Licensing*, 823 A.2d 1101, 1104 (Pa. Cmwlth. 2003) (a PBT serves the same purpose as other field sobriety tests).

Additionally, in *Ryan*, we rejected the argument that a licensee's subjective confusion based on the completion of a PBT supports the conclusion that the licensee's refusal was not knowing or conscious. 823 A.2d at 1105. We reasoned that "any confusion as to the responsibility to submit to the second type

---

**(continued…)**

*Karabinos*, 739 A.2d at 603 (quoting *Department of Transportation, Bureau of Driver Licensing v. Penich*, 535 A.2d 296, 298 (Pa. Cmwlth. 1988) (footnotes omitted) (emphasis in original)). Thus, as a general rule, a second chemical test may be requested only when problems with the first test or other special circumstances exist to make the second request reasonable. 739 A.2d at 603.

of test arose not from statements made by the police officer but solely from Licensee's self-induced and self-destructive confusion about what the law is or should be." *Id.*

Based on the facts of this case, we conclude that our decisions in *Sitoski* and *Ryan* are controlling and that the trial court erred in relying on *Karabinos* to sustain Licensee's appeal.[7]

Accordingly, we reverse the trial court's order.

_____
MICHAEL H. WOJCIK, Judge

---

[7] Based on our disposition of this issue, we need not address the Bureau's argument that Licensee failed to satisfy his burden to show that he had a valid medical reason to refuse the post-arrest breathalyzer test.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Elijah Wilcox                         :
                                      :
              v.                      : No. 128 C.D. 2017
                                      : Submitted: June 2, 2017
Commonwealth of Pennsylvania,         :
Department of Transportation,         :
Bureau of Driver Licensing,           :
                                      :
                   Appellant          :


O R D E R


AND NOW, this 13th day of July, 2017, the order of the Court of Common Pleas of Philadelphia County, dated December 29, 2016, at Docket No. 16-04-02349, is hereby REVERSED and the 12-month suspension of Elijah Wilcox's operating privilege is reinstated.


_____
MICHAEL H. WOJCIK, Judge