583 A.2d 24

**In the Matter of the Appeal of Raymond L. ATTLEBERGER from the Action of the Secretary of Transportation of the Commonwealth of Pennsylvania in Suspending his Motor Vehicle Operator's License.**

**Appeal of Raymond L. ATTLEBERGER.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 12, 1990.

Decided Nov. 28, 1990.

Petition for Allowance of Appeal Granted May 14, 1991.

330

Joseph J. Liotta, III, Brandt, Liotta & Stuttler, Franklin, Pa., for appellant.

Timothy P. Wile, Asst. Counsel in charge of Appellate Section, with him, Harold H. Cramer, Asst. Chief Counsel, and John L. Heaton, Chief Counsel, King of Prussia, for appellee.

Before CRAIG, President Judge, and DOYLE, COLINS, PALLADINO, SMITH, KELLEY and BYER, JJ.

DOYLE, Judge.

Raymond L. Attleberger appeals an order of the Court of Common Pleas of Venango County sustaining the one-year suspension of his operating privileges for refusing to submit to a chemical test pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547(b).[1]

At approximately 2:00 a.m. on May 30, 1989, Lieutenant Richard O. Goldsmith of the City of Franklin Department of Public Safety observed two motorcycles pass him in the opposite direction, one of which was being operated without headlights or taillights. He followed the two motorcycles to investigate, and, when they eventually stopped at the Attleberger's residence, Lt. Goldsmith approached Attleberger and observed that he appeared to be unsteady getting off his motorcycle. Lt. Goldsmith further noticed an odor of alcohol on Attleberger's breath and that Attleberger's speech was slurred. He requested that Attleberger perform field sobriety tests and, following their unsatisfactory performance, administered a preliminary breath test (PBT) with an Alco–Sensor 3, which registered a blood alcohol reading of .168 percent. Lt. Goldsmith then placed Attle-

---

1. Section 1547(b) of the Vehicle Code provides for the suspension of a driver's license for a period of one year upon a licensee's refusal to submit to chemical testing to determine blood alcohol content.

berger under arrest for driving under the influence of alcohol. Attleberger was transported to Franklin Regional Medical Center for a blood test, which he refused to take, after having been told that he would lose his driver's license for one year. Attleberger testified at the de novo hearing before President Judge White that he refused the blood test even after being warned because he felt that he had already taken the PBT and did not need to take another test.[2] Lt. Goldsmith testified that he read Attleberger the implied consent law several times but that Attleberger persisted in refusing to submit to the test.[3] Nowhere in any of the

2. Attleberger's testimony on direct examination was as follows:
Q Did he [Lt. Goldsmith] tell you that he wanted you to supply a sample of your blood at the hospital?
A He told me that up in my driveway, and I told him that I wasn't taking no blood tests. I have a heart condition and I didn't want any needle stuck in me. I was tired from riding all day, and I already took the breath test, so why would I need to take another test.
Q What do you mean by that?
A Well, If I already took a breath test, why do I need to be bothered taking another test.
Q What made you think you took a breath test?
A I blowed in this thing, and he game me a reading which was inaccurate. I hadn't hardly drank that day.
Q You thought you took a test on your breath?
A If you blow into a thing with your breath, he told you a certain reading at the time, that's a breath test. Wouldn't anybody think so?
Q Is that the reason you refused your blood test?
A Yes.
(N.T. pp. 15–16).
On cross-examination his testimony was:
Q Did you understand at that point when Lt. Goldsmith said to you if [you] did not submit to a test you would lose your license, did you understand what he was telling you?
A That I knew that my stepson had only taken a breath test.
Q I am not talking about your stepson. I am asking you what you understood Lt. Goldsmith telling you that evening. Did you understand the consequences when he told you if you refused that you would lose your license for a year, did you understand that warning?
A I understood that he said that, but I knew I already took the breath test so I didn't think it was true.
(N.T. p. 18).

3. Lt. Goldsmith's testimony on direct examination was as follows:
Q Did you feel he understood the warning you had given to him?

testimony was there any indication that Attleberger was advised at any time of his constitutional rights under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), nor did Attleberger at any time request to call or speak to anyone. Subsequent to this incident the Department of Transportation (Department) sent him notice that his license was suspended for one year for failure to submit to a chemical test.

Attleberger appealed to the trial court which upheld the suspension on the basis that the PBT is not a chemical test for purposes of consenting to a chemical test under Section 1547 of the Vehicle Code, and that Attleberger's refusal to take the blood test on the basis that he had already taken the PBT did not result in the "confusion" which the Supreme Court contemplated in *Department of Transportation, Bureau of Traffic Safety, v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), and *Commonwealth v. McFadden,* 522 Pa. 100, 559 A.2d 924 (1989), so as to preclude a knowing and conscious refusal. The trial court thus dismissed Attleberger's appeal. Attleberger has appealed to our Court.

Attleberger argues on appeal that he was confused over his legal rights with regard to taking a chemical test after having taken the PBT and that he deserves protection from such confusion under the penumbra of *O'Connell.*

In *O'Connell,* the licensee was arrested and was advised immediately of his *Miranda* rights, including his constitutional right to counsel. He was then asked to submit to a breathalyzer test and refused because he had not been permitted to contact his attorney. The trial court in *O'Connell* accepted the licensee's testimony as credible. The Supreme Court determined that the licensee was unfairly confused when he was given his *Miranda* warnings and

A Yes. He turned around and he said, "You can shove this up your ass."
Q How many times did you warn Mr. Attleberger?
A Probably three or four times in the laboratory at the hospital.
Q Okay. At that point did you then take that to be a refusal?
A Yes, I did.
(N.T. p. 6).

**334**

immediately afterwards was asked to submit to a breathalyzer test. The court held that when this sequence of events occurs, law enforcement officials must inform a licensee that he/she is not entitled to consult with an attorney or anyone else before taking a breathalyzer test.[4]

■ We do not agree that *O'Connell,* should be extended to the present case. Section 1547(k) of the Vehicle Code, 75 Pa.C.S. § 1547(k) provides:

> **Prearrest breath test authorized.—**A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department of Health for this purpose. The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest. The preliminary breath test shall be in addition to any other requirements of this title. No person has any right to expect or demand a preliminary breath test. Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).

Furthermore, in *Wall v. Commonwealth,* 114 Pa.Commonwealth Ct. 397, 539 A.2d 7 (1988), we held:

> A preliminary breath test in the field, performed on an instrument which detects the presence of alcohol, is not one of the chemical tests of breath, blood or urine deemed to be consented to by Section 1547(a).

Attleberger, of course, was wrong to have assumed that he did not have to submit to the blood-alcohol test subsequent to having taken the preliminary breath test. Any confusion he may have experienced was *not* due to any statements made by Lt. Goldsmith, nor to any confusion in

4. In *Department of Transportation, Bureau of Driver Licensing v. Fiester,* 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990, contemporaneously with this opinion), we held that where *Miranda* warnings precede or are given in close approximation to the implied consent warnings and the chemical test request such a juxtaposition is *per se* confusing.

any manner related to his constitutional rights, but rather, as President Judge White explained, was of his own creation. *O'Connell* and *McFadden* do not add a safety net to someone falling into such self-induced and self-destructive confusion about what the law is or should be.

 The dissent misstates our holding when it mistakenly explains (dissent Op. p. 30) that "the majority ... would restrict *O'Connell* by holding that the arrestee can only be confused when *Miranda* has been given or when the arrestee requests to speak with an attorney or someone else." To the contrary, it is only when a licensee is confused *over his constitutional rights,* (not *any* confusion) that an affirmative duty arises on the part of the police to advise a licensee that those constitutional rights do not apply under the implied consent law. Such confusion could be caused in several ways and may exist for different reasons, for example, (a) because of the close approximation of *Miranda* warnings to the police officer's request to take an intoxilyzer test, or, (b) because of being "Mirandized–by–T.V." and requesting to speak to an attorney even though *no Miranda* warnings were given, *or,* (c) because of confusion for other reasons not yet judicially encountered which confusion could be overtly manifested in some other way. The *O'Connell* confusion, however, can not exist merely by a licensee's standing mute (even though a citizen has the right to remain silent when charged with a criminal offense). More important, such confusion concerning constitutional rights does not exist when a trial court has found that the licensee was confused for some other reason, as in this case where the driver himself explained he did not believe he had to take *another* test because he had already "blowed in this thing" while taking field sobriety tests. To hold to the contrary in this case would eviscerate and overcome statutory language that commands that such a preliminary test "shall be in addition to any other requirements of this title." [5]

5. *See* 75 Pa.C.S. § 1547(k).

Rather than eliminate confusion, the dissent would require the police in *every* case to explain that constitutional rights do not apply, even when no *Miranda* warnings were given, which we suggest would lead to or create the very confusion that is sought to be avoided.

Further, and more significant, is the Supreme Court's admonition in *O'Connell*, which the dissent quotes (dissent Op. p. 29):

> *Since the course of conduct of the police creates the confusion* in these cases, it is appropriate to place the duty on them to clarify the extent of the right of counsel.... (Emphasis added.)

Nothing in the factual background of this case can be remotely related to the course of conduct of the police officers. The Licensee in this case simply believed he did not have to submit to the blood test because he had already taken a breathalyzer test; no explanation by the police regarding his constitutional right to call an attorney, and then the further advice that he did not have that right before taking the intoxilyzer test, would have removed the mist of that confusion nor cleared up the transparent "error" on the part of the Licensee.[6]

Affirmed.

## ORDER

NOW, November 28, 1990, the order of the Court of Common Pleas of Venango County in the above-captioned matter is hereby affirmed.

6. The dissent explains (dissent Op. p. 29) that the *O'Connell* decision of *this* Court placed the duty of explanation on the police to avoid the "manipulation of arrestees who may be under legitimate confusion concerning their rights."

First, it was that decision which the Supreme Court reversed in *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989), and more important, we do not believe we sanction "such manipulation" by the police in this case where the record is completely devoid of *any* such action on the part of the police in the first place.

PALLADINO, Judge, concurring.

I concur in the result only. I write separately to emphasize what I believe is the majority's misinterpretation of the *Department of Transportation, Bureau of Traffic Safety v. O'Connell,* 521 Pa. 242, 555 A.2d 873 (1989) decision.

The majority interprets *O'Connell* as holding that, when a licensee receives simultaneous recitations of *Miranda* rights and the implied consent warnings followed by a request to take a breathalyzer test, the licensee is per se confused and therefore, a third warning that *Miranda* rights do not apply to the breathalyzer test must be given.

The majority omits a critical step in the *O'Connell* process. The supreme court held as follows:

> Accordingly, *where an arrestee requests to speak to or call an attorney, or anyone else,* when requested to take a breathalyzer test, we insist that in addition to telling the arrestee that his license will be suspended for one year if he refuses to take a breathalyzer test, the police instruct the arrestee that such rights are inapplicable to the breathalyzer test and that the arrestee does not have the right to consult with an attorney or anyone else prior to taking the test.

*Id.,* 521 Pa. at 253, 555 A.2d at 878 (emphasis added).

The language is clear. The licensee must demonstrate his confusion as to the applicability of the *Miranda* right to counsel by requesting to speak to an attorney before the *O'Connell* warning is necessary. The purpose of the *O'Connell* decision is to eliminate a licensee's confusion as to his right to an attorney when asked to take a breathalyzer or blood alcohol test. Without any manifestation of such confusion, which must be evidenced by his request to talk to a lawyer, the *O'Connell* warning is unnecessary and potentially confusing in itself. *See Department of Transportation, Bureau of Driver Licensing v. Fiester,* 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990, Palladino, J., *dissenting* ).

Furthermore, I disagree with the majority's attempt on page 31 to categorize potential causes of licensee confusion. First, the majority suggests that the giving of implied consent warnings and *Miranda* rights in close proximity time-wise triggers *O'Connell* warnings on a per se confusion thesis. It is my position that unless a licensee asks to speak to a lawyer after receiving both warnings, thus exhibiting confusion as to his right to speak to counsel, no further obligation of explanation by the police exists.

The majority next concludes that *O'Connell* warnings are required even though the police have not given *Miranda* warnings, merely because the licensee may have been "Mirandized" by television. It is inappropriate for any court to engage in speculation based on hypotheticals. There is no claimed television impact before this court.

Finally, it must again be noted that to suggest yet another area upon which a licensee can rely when seeking to excuse a refusal to take a breath or blood test based upon "other overt manifestation not yet encountered" goes far beyond the holding in *O'Connell* and *McFadden.*

The majority, by postulating categories, eliminates a clear condition to the need for *O'Connell* warnings. *O'Connell* requires that a warning be given that *Miranda* rights do not apply to the breathalyzer test only if or when *Miranda* rights have been read to the licensee. The supreme court stated at the outset of the *O'Connell* opinion:

> We granted Appellant's petition for allowance of appeal to ... give guidance in the troublesome situation presented in cases such as this one, where a person is arrested for a crime, *read Miranda rights,* and is then told to submit to a breathalyzer test, but is not told that his right to see an attorney does not extend to taking this test.

*O'Connell,* 521 Pa. at 251, 555 A.2d at 875 (emphasis added).

Further, as the majority correctly notes on page 28, the Supreme Court in *O'Connell* stated as follows:

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent to the right to counsel. . . .

Unless the police recite the *Miranda* rights, there is no police conduct to create confusion and therefore, no *O'Connell* warnings are required.

SMITH and BYER, JJ., join in this opinion.

KELLEY, Judge, dissenting.

I respectfully dissent. The majority today restrains *O'Connell* from its true meaning. *O'Connell* requires that arrestees be instructed that their right to speak with an attorney (*Miranda*) is inapplicable to a breathalyzer chemical test request pursuant to Section 1547(b) of the Vehicle Code, 75 Pa.C.S. § 1547. The purpose of the rule is that a knowing and conscious choice to take or refuse the test can be made. In *O'Connell*, our Supreme Court stated:

Since the course of conduct of the police creates the confusion in these cases, it is appropriate to place the duty on them to clarify the extent of the right to counsel when asking arrestees to take breathalyzer tests thereby insuring that those arrestees who indicate their confusion over their *Miranda* rights, are not being misled into making uninformed and unknowing decisions to take the test.

521 Pa. 242, 253, 555 A.2d 873, 878 (1989).

This Court, in deciding *O'Connell*, placed the duty upon police in order to avoid the "manipulation of arrestees who may be under legitimate confusion concerning their rights." *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 99 Pa.Commonwealth Ct. 410, 415, 513 A.2d 1083, 1085 (1986) (quoting *Department of Transportation, Bureau of Traffic Safety v. Ferrara*, 89 Pa.Commonwealth Ct. 549, 493 A.2d 154 (1985)). The majority opinion today sanctions just such manipulation.

The majority further ignores the clear language of *O'Connell* which states:

> The problem in this case, and many similar cases that have arisen, is that these requests to take breathalyzer tests take place as part of the investigation conducted by police in regards to a drunk driving charge which is criminal in nature. The police proceed with the *Miranda* warnings and at some point (usually when the driver asks to see his lawyer) stop questioning and abruptly change 'hats' and ask the driver to submit to the breathalyzer test. If arrestee hesitates and attempts to exercise his *Miranda* right by asking for a lawyer or asking to make a phone call, a refusal is recorded.

*O'Connell*, 521 Pa. at 251, 555 A.2d at 877.

The Supreme Court continued to explain the problem.

> This state of affairs is unacceptable because it is fraught with pitfalls for the arrestee who is not trained to recognize the difference between a civil or criminal investigation and becomes a source of accusation of manipulation by the police over confused individuals who are suspected of having dulled senses.

*Id.*, 521 Pa. at 252, 555 A.2d at 877.

It is clear that the *O'Connell* test is "confusion of the arrestee" when requested to take the breathalyzer test. In *O'Connell*, the arrestee had been Mirandized and had requested to call an attorney. The Supreme Court held that this constituted confusion. In *Department of Transportation, Bureau of Driver Licensing v. Fiester*, 136 Pa.Commonwealth Ct. 342, 583 A.2d 31 (1990, contemporaneously with this opinion), the majority requires the *O'Connell* explanation to be given even where the suspect has not requested to speak with an attorney, holding that the juxtaposition of *Miranda* and the implied consent warning is per se confusing.

The majority here, however, would restrict *O'Connell* by holding that the arrestee can only be confused when *Miranda* has been given, or when the arrestee requests to

speak with an attorney or someone else.[1] This restriction is erroneous. It is clear that *O'Connell* embodies any legitimate confusion which might prevent a knowing and conscious refusal.

It is naive to believe that the knowledge of the *Miranda* warning is not universally known among the people in this country. The news and entertainment media have saturated space and time with the language "you have a right—." Many people could repeat the words verbatim from constant exposure.

Even those people who might not know the right and/or the words of the *Miranda* warning are aware that the warning is given as a matter of routine arrest. The average person understands that the police must conscientiously strive to protect a person's rights when placing him or her under arrest. This knowledge in itself is sufficient to constitute confusion unless the entire spectrum of rights is explained to suspects and arrestees in driving under the influence cases.

Our Supreme Court has stated that to require a warning as set forth in *O'Connell* is neither onerous, nor will it cause unnecessary delay.[2] The warning has been required in every conceivable factual situation save this one. Yet the protection afforded by *O'Connell* is fragile indeed if it can be stripped away merely by failure to give *Miranda* warnings.

The implied consent law intertwines criminal and civil penalties and procedures. Its theory and operation are confusing, even to members of this Court. I would attempt to simplify somewhat the operation of the law by simply requiring that all suspects and arrestees be warned that they have no right to an attorney prior to deciding whether or not to submit to a chemical test. Since the law also has

1. Our Supreme Court has recently found confusion where *Miranda* warnings were not given, but the arrestee requested to speak with an attorney. *Mihalaki v. Department of Transportation,* 525 Pa. 332, 580 A.2d 313 (1990).

2. *O'Connell,* 521 Pa. at 253, 555 A.2d at 878.

criminal aspects, I would also require police to give *Miranda* warnings in all cases, followed by an *O'Connell* explanation.