Tracy Marie RYAN,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF TRANSPORTATION, BUREAU OF DRIVER LICENSING, Appellant.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 21, 2003.

Decided May 20, 2003.

BEFORE: McGINLEY, Judge, SIMPSON, Judge, KELLEY, Senior Judge.

OPINION BY Judge SIMPSON.

The Department of Transportation, Bureau of Driver Licensing (PennDOT), appeals from the order of the Court of Common Pleas of Lackawanna County (trial court) that sustained Tracy Marie Ryan's (Licensee) appeal of PennDOT's suspension of her driving privileges for one year for refusing to submit to a chemical blood test under 75 Pa.C.S. § 1547(a).[1] We reverse.

At about 5:30 a.m. on June 15, 2002, a police officer for South Abington Township, William Maslar (Officer), stopped Licensee's vehicle for speeding. When Licensee rolled her car window down, the Officer smelled a strong odor of alcohol and noticed Licensee's eyes were glassy and her speech slurred. The Officer administered a pre-arrest breath test (PBT), but, because Licensee did not provide enough airflow, the equipment was not able to get a reading. Reproduced Record (R.R.) 13a. The Officer explained to Licensee that she was not providing enough air for the test and received her permission to administer another PBT using a different model breath test kit. R.R. 15a. This time Licensee's breath measured a Blood Alcohol Content of .121%. R.R. 15a.

Based on the results of the second PBT test with the second breath test kit, the Officer placed Licensee under arrest for driving under the influence of alcohol (DUI). R.R. 11a. After Licensee was in the rear of the Officer's patrol car, he informed her that he was driving her to

---

Terrance M. Edwards and Timothy P. Wile, Asst. Counsel, In–Charge, Harrisburg, for appellant.

Gerald J. Hanchulak, Scranton, for appellee.

1. Sections 1547(a) and (b) of the Vehicle Code, 75 Pa.C.S. §§ 101 9805, is commonly referred to as the Implied Consent Law. 75 Pa.C.S. § 1547. Under these Sections, PennDOT is required to suspend a licensee's operating privilege for one year for a licensee's refusal of a police officer's request to submit to chemical testing. *Department of Transportation, Bureau of Driver Licensing v. Scott*, 546 Pa. 241, 684 A.2d 539 (1996).

the hospital for a blood test and requested she consent to that test. Upon arrival at the hospital, the Officer again asked Licensee if she would submit to the blood test and read the implied consent law directly from the chemical testing form. He told Licensee that her license would be suspended for a year if she did not submit to the blood test. The Officer asked Licensee if she understood the form and if she would sign the form.

Licensee testified that "I told him no because I was asking him why, like I took all the other tests and I didn't know if that was really required because I agreed to both breathalyzers and the field tests." Reproduced Record (R.R.) at 24a. Licensee signed the form, but refused to submit to the chemical test. R.R. 11a, 15a–17a.

At the hearing, the trial court asked the Officer if the second PBT was a valid test. The Officer responded that "it did give us a reading but it's not admissible in court" and that it could not be used "to determine her exact blood alcohol concentration. It's strictly used for probable cause to make an arrest." R.R. 32a, 33a.

■ Finding that the Licensee was confused over her responsibility to submit to the blood test at the hospital, the trial court sustained Licensee's appeal. Penn-DOT appealed to this Court.[2]

PennDOT claims the trial court erred in sustaining Licensee's appeal because of her belief that she complied with all the requirements of the Vehicle Code. R.R. 35a. It argues such a belief did not erase her obligation to undergo a chemical test under Section 1547(a) and (b) of the Vehicle Code. PennDOT contends it proved (1)

Licensee was arrested for DUI by a police officer who had reasonable grounds to believe she was operating a vehicle while under the influence of alcohol; (2) was asked to submit to a chemical test; (3) refused to do so; and (4) was warned that that refusal would result in the suspension of her driving privilege. *Banner v. Department of Transportation, Bureau of Driver Licensing*, 558 Pa. 439, 737 A.2d 1203 (1999).

Licensee contends our Supreme Court views implied consent cases from the point of view of the licensee and is sensitive to a licensee's legitimate confusion concerning their rights. *Department of Transportation, Bureau of Traffic Safety v. O'Connell*, 521 Pa. 242, 555 A.2d 873 (1989) (police have duty to qualify the extent of the right to counsel when requesting arrestee take a breathalyzer test thereby insuring that those arrestees who indicate confusion over their *Miranda* rights, are not misled into making uninformed and unknowing decisions to take the test). *Commonwealth v. McFadden*, 522 Pa. 100, 559 A.2d 924 (1989) (because police did not give licensee the information required by *O'Connell*, licensee sustained burden demonstrating refusal was not knowing and conscious).

The Vehicle Code contemplates two different types of tests. Chronologically, the first type of test is identified in Section 1547(k) of the Vehicle Code, 75 Pa.C.S. § 1547(k)(with emphasis added):

(k) Prearrest breath test authorized:—A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influ-

---

**2.** This Court's scope of review of the trial court is limited to determining whether necessary findings of fact are supported by competent, record evidence, whether the trial court committed an error of law, or abused its

discretion in reaching its decision. *Todd v. Department of Transportation, Bureau of Driver Licensing*, 555 Pa. 193, 723 A.2d 655 (1999).

ence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department of Health for this purpose. *The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest. The preliminary breath test shall be in addition to any other requirements of this title.* No person has any right to expect or demand a preliminary breath test. *Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).*

The test described in Section 1547(k) is a preliminary breath test in the field, performed on an instrument which detects the presence of alcohol. *Wall v. Commonwealth,* 114 Pa.Cmwlth. 397, 539 A.2d 7 (1988). The sole purpose of the field sobriety test is to assist the officer in determining whether a driver should be placed under arrest, not whether the driver is actually intoxicated. *Dep't of Transportation, Bureau of Driver Licensing v. Harbaugh,* 141 Pa.Cmwlth. 288, 595 A.2d 715 (1991). The test serves the same purpose as other, perhaps more familiar, field sobriety tests, such as walking a straight line or touching your nose with your finger. *Wall.* Obviously, this type of test occurs *before arrest.* Significantly, refusal to perform a preliminary breath test cannot be the basis of a license suspension. Section 1547(k) of the Vehicle Code; *Wall.*

The second type of test contemplated by the Vehicle Code is a test administered *after arrest* "for the purpose of determining the alcoholic content of the blood ...." and implicates the Implied Consent Law. *See* Sections 1457(a) and (b) of the Vehicle Code. Unlike the preliminary breath test, refusal to submit to a post-arrest test to determine the alcoholic content of the blood under the Implied Consent Law can result in license suspension. Also, the results of the test may be admissible in court in subsequent criminal and civil actions.

Because the legal consequences of the two types of tests are significantly different, courts treat the tests differently.[3] For present purposes, the most relevant difference arises in circumstances of repeat testing. Unless there is a problem obtaining results, repetition of the second type of test, the post-arrest test intended to determine the alcoholic content of blood pursuant to the Implied Consent Law, is an unreasonable search and may be refused. *Commonwealth v. McFarren,* 514 Pa. 411, 525 A.2d 1185 (1987). Where repetition of the second type of test is requested, the licensee must be informed why it is requested. *Karabinos v. Commonwealth,* 739 A.2d 601 (Pa.Cmwlth. 1999).

Courts take a different approach to a licensee's responsibilities where the first test is a pre-arrest preliminary breath test and the second test is a post-arrest test

---

**3.** Distinguishing between the two types of tests is not always easy. Among other facts, courts look to whether the test was performed before or after arrest. *See Appeal of Attleberger,* 136 Pa.Cmwlth. 329, 583 A.2d 24 (1990) (preliminary breath test administered in field; thereafter licensee arrested and transported to medical center for second type of test); *Wall v. Commonwealth,* 114 Pa.Cmwlth. 397, 539 A.2d 7 (1988) (preliminary breath test administered in field; thereafter licensee arrested and transported to police station for second type of test). Also, courts look to whether the test was performed at the scene or elsewhere. *Id.* Further, courts look to a police officer's explanation of the purpose of the test. *Kromelbein v. Commonwealth,* 161 Pa.Cmwlth. 532, 637 A.2d 728 (1994) (where police officer testified that breath test was intended for added probable cause, it was held to be a preliminary breath test and not the second type of test).

under the Implied Consent Law. *Appeal of Attleberger,* 136 Pa.Cmwlth. 329, 583 A.2d 24 (1990). In *Attleberger,* a licensee performed poorly on field sobriety tests, and a preliminary breath test at the scene of the traffic stop resulted in a reading of .168 percent. The licensee was placed under arrest and taken to a medical center for a blood test. He questioned why he should take another test, and he refused to have blood drawn. On appeal after the trial court upheld the suspension of his license, the licensee contended that he deserved protection from confusion as to his responsibility to submit to repeated tests. Like Licensee here, he relied on *O'Connell* and cases requiring additional warnings to prevent confusion between *Miranda* rights and responsibilities under the Implied Consent Law. This Court sitting *en banc* specifically declined to protect the licensee from self-created confusion which arose from his wrongful assumptions of the law and not from any statement by the police officer. *See also Kromelbein v. Commonwealth* 161 Pa.Cmwlth. 532, 637 A.2d 728 (1994); *Wall.*

■ In this case, the police officer administered a pre-arrest breath test at the scene of the traffic stop. Because he could not obtain valid results, he switched machines and, with permission, performed another pre-arrest breath test at the scene. The police officer testified that the breath test at the scene was strictly used for probable cause to make an arrest. Thereafter, he placed Licensee under arrest and transported her to the hospital. At the hospital, she asked why she needed to have blood drawn after breath tests were performed. After being informed of the consequences of refusal, Licensee refused to submit to the test at the hospital.

As in *Attleberger,* performance of the pre-arrest preliminary breath test here does not preclude administration of the second type of test, the post-arrest test to determine the alcoholic content of the blood pursuant to the Implied Consent Law. Also as in *Attleberger,* any confusion as to the responsibility to submit to the second type of test arose not from statements made by the police officer but solely from Licensee's "self-induced and self-destructive confusion about what the law is or should be." *Id.* at 27.

Both the Licensee and the trial court relied on *Karabinos.* That case, however, is inapposite. In *Karabinos,* the licensee was asked to submit to a repeat of the post-arrest test to determine alcoholic content of blood. We held that, where there was no explanation of the reason for the second test of the same type, the license could not be suspended for refusal to submit to the second test. *Karabinos* has no application to the present case where the inquiry involves a request to submit to a post-arrest test under the Implied Consent Law following a pre-arrest preliminary breath test at the scene. Rather, *Attleberger* controls.

Clearly, Licensee here refused a test authorized by the Implied Consent Law. Her confusion is not a defense under these circumstances. We therefore reverse, thus reinstating the license suspension.

### ORDER

AND NOW, this 20th day of May, 2003, the decision of the Court of Common Pleas of Lackawanna County in the above-captioned matter is reversed.