IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah Sharkey,                        :
               Appellant                :
                                        :
        v.                              : No. 1543 C.D. 2015
                                        : Submitted:  January 22, 2016
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing              :


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE MICHAEL H. WOJCIK, Judge
          HONORABLE DAN PELLEGRINI, Senior Judge


OPINION NOT REPORTED


MEMORANDUM OPINION BY
SENIOR JUDGE PELLEGRINI              FILED: February 16, 2016


        Deborah Sharkey (Licensee) appeals the order of the Court of
Common Pleas of Montgomery County (trial court) denying her appeal from the
Pennsylvania Department of Transportation, Bureau of Driver Licensing's
(PennDOT) one-year suspension of her operating privileges for refusing to submit
to chemical testing pursuant to Section 1547(b) of the Vehicle Code, 75 Pa. C.S.
§1547(b),[1] in connection with her arrest for driving under the influence (DUI) in

---

[1] Section 1547(b)(1)(i) of the Vehicle Code provides, in relevant part:

**(b) Suspension for refusal.—**

        (1) If any person placed under arrest for a violation of
    section 3802 is requested to submit to chemical testing and refuses
**(Footnote continued on next page…)**

violation of Section 3802 of the Vehicle Code, 75 Pa. C.S. §3802. For the reasons that follow, we affirm.

## I.

On the evening of February 25, 2015, while on routine patrol, Officer Francis Joseph Cattie, Jr. (Officer Cattie) of the Lower Moreland Township Police Department observed Licensee's vehicle stopped in a travel lane with its hazard signal flashing. Officer Cattie approached the vehicle and in speaking with Licensee, detected a strong odor of alcohol and observed that Licensee was slurring her speech. Licensee advised Officer Cattie that she hit a pothole and thereby disabled her vehicle. Officer Cattie noticed that both the front and rear tires of the vehicle were flat and requested that Licensee produce her license, registration and insurance information. Licensee produced her license and was asked again for her registration and insurance information. She then produced her insurance information. She was asked a third time for her registration before she produced it.

---

**(continued…)**

to do so, the testing shall not be conducted but upon notice by the police officer, the department shall suspend the operating privilege of the person as follows:

(i) Except as set forth in subparagraph (ii), for a period of 12 months.

75 Pa. C.S. §1547(b)(1)(i).

2

Suspecting Licensee to be under the influence, Officer Cattie asked Licensee to undergo three field sobriety tests,[2] which Licensee failed to successfully complete. Officer Cattie also administered a pre-arrest breath test. Based on the foregoing, Licensee was placed under arrest for suspicion of DUI.

In the back of Officer Cattie's patrol vehicle, Officer Cattie read Licensee the Implied Consent Warnings verbatim and requested that she submit to a blood test in order to determine her blood alcohol content (BAC). Pursuant to the Implied Consent Warnings, an officer may choose which test – blood, breath, or urine – to administer, and Officer Cattie chose the blood test, reading only that option to Licensee. As Officer Cattie was reading the warnings, Licensee asked if it was sufficient that she provided a pre-arrest breath test, to which Officer Cattie responded "no." Licensee was unwilling to undergo a blood test at that time. She was then transported to the Lower Moreland Police Department and was read the Implied Consent Warnings a second time. She again refused to submit to testing and signed the Implied Consent Warnings form, indicating that she had been advised of the consequences of refusal and nonetheless refused.

As a result, Licensee received notice from PennDOT that her operating privilege was suspended for a period of one year pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa. C.S. §1547(b)(1)(i), for refusal to submit to chemical testing. Licensee appealed the suspension to the trial court.

---

[2] Licensee attempted a one-leg stand test, a finger-to-nose test, and a nine-step walk-and-turn test.

3

## II.

Before the trial court, Licensee testified that on the evening of her arrest, she went out for dinner, during which she had two cosmopolitans and half of a glass of wine, along with bread, soup, meat and potatoes. She testified that she did not feel intoxicated when she left the restaurant and that two-and-a-half glasses of alcohol is not normally a lot for her. She stated that when Officer Cattie requested information from her, she had difficulty finding her license because she was nervous and her wallet contains approximately 20 different cards. With regard to Officer Cattie's multiple requests, she stated that she did not "recall it that way, but he says that's the way it was." (Reproduced Record (R.R.) at 28.)

Licensee recalled performing the field sobriety test, in heels, and then giving a breath sample for the pre-arrest breath test. She stated that she did not remember Officer Cattie reading her the Implied Consent Warnings or signing it, but that "[t]hat is my signature, though. I did sign it." (*Id.* at 32.) She further testified that she thought she complied with chemical testing by providing a breath sample and did not think she had to submit to a blood test because she "was married to a police officer that worked in AID [sic], and gave the … breathalyzer for years. And never in that time did he ever speak about giving blood to anybody -- or taking people's blood." (*Id.* at 33.) Licensee admitted to refusing chemical testing because she did not think she had to give blood.

4

The trial court denied Licensee's appeal and reinstated her suspension, reasoning that PennDOT established its *prima facie* case[3] by showing that: Officer Cattie arrested Licensee for DUI after he observed her in her vehicle in a travel lane, detected the smell of alcohol emanating from her vehicle, and conducted three field sobriety tests that Licensee failed; Officer Cattie read Licensee the Implied Consent Warnings verbatim, thereby informing her of what would happen if she failed to submit to a chemical test; and Officer Cattie requested a blood test from Licensee, which she refused to provide. The trial court was not persuaded by Licensee's argument that she thought she had complied with the law when she provided a breath sample because there is no legal support for such an argument. Moreover, the trial court emphasized that Officer Cattie read the entirety of the Implied Consent Warnings to Licensee twice, verbatim, and apprised Licensee of the consequences of a refusal, and yet she signed the form, indicating her refusal to submit to a blood test. As such, the trial court concluded that Licensee's refusal was knowing and voluntary.

---

[3] In cases where PennDOT suspends a driver's license for refusal to submit to chemical testing, PennDOT must prove that: 1) the licensee was placed under arrest for DUI by a police officer who had reasonable grounds to believe that he or she was operating or was in actual physical control of the movement of the vehicle while under the influence of alcohol; 2) he or she was requested to submit to chemical testing; 3) he or she was informed that a refusal to submit to such testing would result in a suspension of his or her operating privileges; and 4) the licensee refused to submit to the test. *Gregro v. Department of Transportation, Bureau of Driver Licensing*, 987 A.2d 1264, 1267 n. 3 (Pa. Cmwlth. 2010).

5

## III.

## A.

On appeal,[4] Licensee does not deny that PennDOT established its *prima facie* case but instead contends that her compliance with the pre-arrest breath test resulted in her reasonable assumption that she satisfied her obligation to submit to chemical testing under Section 1547 of the Vehicle Code.

In *Ryan v. Department of Transportation, Bureau of Driver Licensing*, 823 A.2d 1101 (Pa. Cmwlth. 2003), a case similar to the instant one, this Court addressed whether a licensee's incorrect belief that a pre-arrest breath test is a sufficient defense for failing to satisfy her obligation to submit to a chemical test under the Implied Consent Law. In that case, when a licensee failed to provide enough air for a pre-arrest breath test, the officer received her permission to administer another pre-arrest breath test using a different model breath test kit. Based on the results of the second kit, the officer arrested licensee for DUI, informed her that he was taking her to the hospital for a blood test, and requested that she consent to the test. At the hospital, the officer read her the Implied Consent Warnings and again requested that she submit to the blood test. However, she refused to do so, testifying that, "I told him no because I was asking him why, like I took all the other tests and I didn't know if that was really required because I agreed to both breathalyzers and the field tests." *Id.* at 1103 (internal citations

---

[4] Our scope of review in a motor vehicle license suspension case is limited to determining whether the findings of fact are supported by substantial evidence, whether errors of law have been committed, and whether the trial court's decision demonstrates a manifest abuse of discretion. *Hewitt v. Commonwealth of Pennsylvania*, 541 A.2d 1183, 1184 (Pa. Cmwlth. 1988), *appeal denied*, 554 A.2d 511 (Pa. 1989).

6

omitted).  The licensee signed the Implied Consent Warnings, acknowledging her refusal to submit to the test.

The trial court sustained the licensee's appeal, finding that she was confused over her responsibility to submit to the blood test.  On appeal, this Court explained that the Vehicle Code provides two different types of tests:  the pre-arrest breath test and the post-arrest chemical test.  Citing Section 1547(k) of the Vehicle Code, 75 Pa. C.S. §1574(k), we explained that the purpose of the pre-arrest breath test is "to assist the officer in determining whether or not the person should be placed under arrest.  The preliminary breath test shall be in addition to any other requirements of this title.  …  Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e)."  823 A.2d at 1104 (citations omitted).

We distinguished between the pre-arrest breath test and the post-arrest test, explaining:

> The second type of test contemplated by the Vehicle Code is a test administered *after arrest* "for the purpose of determining the alcoholic content of the blood…. " and implicates the Implied Consent Law.  *See* Sections 1457(a) and (b) of the Vehicle Code [75 Pa. C.S. §1457(a) and (b)].  Unlike the preliminary breath test, refusal to submit to a post-arrest test to determine the alcoholic content of the blood under the Implied Consent Law can result in license suspension.
>
> ***
>
> Courts take a different approach to a licensee's responsibilities where the first test is a pre-arrest

7

preliminary breath test and the second test is a post-arrest test under the Implied Consent Law. *Appeal of Attleberger*, 136 Pa. Cmwlth. 329, 583 A.2d 24 (1990). In *Attleberger*, a licensee performed poorly on field sobriety tests, and a preliminary breath test at the scene of the traffic stop resulted in a reading of .168 percent. The licensee was placed under arrest and taken to a medical center for a blood test. He questioned why he should take another test, and he refused to have blood drawn. On appeal after the trial court upheld the suspension of his license, the licensee contended that he deserved protection from confusion as to his responsibility to submit to repeated tests. . . . This Court sitting *en banc* specifically declined to protect the licensee from self-created confusion which arose from his wrongful assumptions of the law and not from any statement by the police officer. *See also Kromelbein v. Commonwealth*, 161 Pa. Cmwlth. 532, 637 A.2d 728 (1994); *Wall*.

823 A.2d at 1104-05 (emphasis in original). We concluded that the licensee's confusion was not a defense for failing to submit to a blood test, explaining that compliance with a pre-arrest breath test does not preclude administration of the post-arrest chemical test to determine BAC, and that any confusion as to licensee's responsibility to submit to the blood test "arose not from statements made by the police officer but solely from Licensee's 'self-induced and self-destructive confusion about what the law is or should be.'" *Id.* at 1105 (citation omitted).

Based on the foregoing, Licensee's incorrect belief that her compliance with the pre-arrest breath test satisfied her obligation to submit to a blood test is not a valid defense. Furthermore, even if she was confused as to her responsibilities under the Implied Consent Law, her misunderstandings should have been quelled after she asked Officer Cattie, during his first reading of the

Implied Consent Warnings, whether the pre-arrest breath test could take the place of the blood test, to which he replied "no." This Court cannot protect Licensee from her "self-induced and self-destructive confusion" about the law. *Id.*

**B.**

Next, relying on *Solomon v. Department of Transportation, Bureau of Driver Licensing*, 982 A.2d 61 (Pa. 2009), Licensee argues that she was not given a "meaningful opportunity" to comply with her chemical testing obligation because she did not explicitly refuse chemical testing as she submitted to the breath test and she should not be penalized simply because she was not informed that she could only submit to the test desired by Officer Cattie.

Licensee's reliance on *Solomon* is misplaced. In *Solomon*, after a licensee was read the Implied Consent Warnings, he "responded '[g]o f* * * yourself, and do what you've got to do,'" which the officer interpreted as a refusal to submit to testing. *Id.* at 641. This Court found that PennDOT failed to prove that the licensee was "offered a meaningful opportunity to comply," reasoning:

> Although [licensee's] expletives were inappropriate, his response as a whole was certainly ambiguous and not an explicit refusal. [Licensee's] response could have been fairly taken to mean go ahead with the chemical test. *The officer should have made an attempt at that point to confirm whether [Licensee] would submit to testing.* Instead, the officer escorted him out of the room and immediately deemed a refusal.

*Id.* at 643 (emphasis added).

9

Our Supreme Court has held that "anything substantially less than an unqualified, unequivocal assent" to submit to testing constitutes a refusal to do so. *Department of Transportation v. Renwick*, 669 A.2d 934, 939 (Pa. 1996). "Officers are not required to 'spend effort either cajoling the licensee or spend time waiting to see if the licensee will ultimately change his mind.'" *Walkden v. Department of Transportation, Bureau of Driver Licensing*, 103 A.3d 432, 440 (Pa. Cmwlth. 2014) (citations omitted). Whether a licensee's conduct constitutes a refusal to submit to chemical testing is a question of law fully within this Court's discretion to review. *Id.* Where an officer has read a licensee the Implied Consent Warnings twice, he or she is deemed to have had a "meaningful opportunity" to submit to chemical testing. *See id.* at 441.

Here, unlike in *Solomon*, Licensee was given two separate opportunities to consent to a blood test. She was read the Implied Consent Warnings twice and was requested both times to submit to a blood test, but she refused to do so each time despite knowing the consequences of her refusal. Moreover, she signed the Implied Consent Warnings form, indicating her refusal to consent to a blood test. Officer Cattie was under no further obligation to convince Licensee to take the blood test; he provided her with sufficient meaningful opportunity, which she chose to reject.

## C.

Finally, Licensee argues that the Implied Consent Warnings are deficient as they do not inform a licensee that completing the pre-arrest breath test does not satisfy one's obligation under the Implied Consent Law.

However, it is well settled that the warnings contained in the Implied Consent Warnings are sufficient as a matter of law to advise a licensee of his or her rights under the Implied Consent Law and that they "contain[ ] sufficient information upon which a licensee can base a decision as to whether to submit to testing." *McKenna v. Department of Transportation, Bureau of Driver Licensing*, 81 A.3d 79 (Pa. 2013). Moreover, as our Supreme Court held, once an officer provides a licensee with the Implied Consent Warnings, the officer "has done all that is legally required to ensure that the [licensee] has been fully advised of the consequences of refusing to submit to chemical testing." *Department of Transportation, Bureau of Driver Licensing v. Scott*, 684 A.2d 539, 546 (Pa. 1996).

Licensee was read the Implied Consent Warnings twice and during one of the readings, she was explicitly advised that her pre-arrest breath test would not satisfy her legal obligation. She made her decision to refuse a blood test knowing full well the ramifications of her refusal.

Accordingly, the order of the trial court is affirmed.

_____
DAN PELLEGRINI, Senior Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Deborah Sharkey,                        :
                    Appellant           :
                                        :
            v.                          : No. 1543 C.D. 2015
                                        :
Commonwealth of Pennsylvania,           :
Department of Transportation,           :
Bureau of Driver Licensing              :

# **O R D E R**

AND NOW, this 16th day of February, 2016, the order of the Court of Common Pleas of Montgomery County dated August 17, 2015, at No. CP-2015-10587, is affirmed.

_____
DAN PELLEGRINI, Senior Judge