# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chase Staller, : 
        Appellant : 
  : No. 952 C.D. 2024
        v. : 
  : Argued: December 8, 2025
Commonwealth of Pennsylvania, : 
Department of Transportation, : 
Bureau of Driver Licensing : 


BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE LORI A. DUMAS, Judge
                HONORABLE MATTHEW S. WOLF, Judge


**OPINION BY**
**JUDGE DUMAS**                                  **FILED: January 9, 2026**


        Chase Staller (Licensee) appeals from the order issued by the Court of Common Pleas of Perry County (trial court) on June 26, 2024, which dismissed Licensee's statutory appeal from a 12-month suspension of his driving privileges imposed by the Commonwealth of Pennsylvania, Department of Transportation, Bureau of Driver Licensing (DOT). DOT imposed the suspension pursuant to Section 1547(b)(1)(i) of the Vehicle Code, 75 Pa.C.S. § 1547(b)(1)(i), which is commonly known as the Implied Consent Law, as a result of Licensee's refusal to submit to chemical testing upon his arrest for driving under the influence of alcohol or a controlled substance (DUI).[1] After careful review, we affirm.

---

[1] Section 1547 of the Vehicle Code sets forth the civil penalties for a driver arrested for driving under the influence of alcohol (DUI) or a controlled substance who refuses to submit to chemical testing, providing in relevant part:

# I. BACKGROUND[2]

On September 25, 2022, at approximately 3:00 in the morning, Trooper Jason Elliott (Trooper Elliott) and Trooper Andrew Reid (Trooper Reid) were on patrol and noticed indications of a recent vehicle crash. They noticed car parts and debris in and around the road, as well as a damaged guardrail. Upon further investigation, Troopers Elliott and Reid saw Licensee lying on his back in the grass next to a storage unit entrance approximately 100 feet from where a car registered to Licensee's father was crashed and embedded into three of the individual units.

Trooper Elliott spoke with Licensee, who appeared to be in significant pain, and immediately detected an odor of alcohol coming from Licensee, slurred speech, and bloodshot eyes. Based on his experience employed by the state police for 5 years and approximately 100 DUI investigations leading to charges, Trooper Elliott concluded that these were "regular indicators of alcohol impairment." *See* Tr. of Procs., 8/20/24, at 6. Licensee also admitted to Trooper Elliott that he had

---

**(a) General rule**.--Any person who drives, operates or is in actual physical control of the movement of a vehicle in this Commonwealth shall be deemed to have given consent to one or more chemical tests of breath or blood for the purpose of determining the alcoholic content of blood or the presence of a controlled substance if a police officer has reasonable grounds to believe the person to have been driving, operating or in actual physical control of the movement of a vehicle in violation of [S]ection . . . 3802 (relating to driving under the influence of alcohol or controlled substance) . . . .
**(b) Civil penalties for refusal**.--
(1) if any person placed under arrest for a violation of Section 3802 is requested to submit to chemical testing and refuses to do so, the testing shall not be conducted upon notice by the police officer, [DOT] shall suspend the operating privilege of a person as follows:
(i) . . . for a period of 12 months.

75 Pa.C.S. § 1547(a), (b)(1)(i).

[2] We derive the background from the trial court's hearing and Pa.R.A.P. 1925(a) Opinion, which is supported by substantial evidence of record. *See* Tr. of Procs., 8/20/24; Trial Ct. Op., 9/6/24.

been at a friend's house and consumed two beers earlier that night. Licensee further stated that he was looking at his phone when he crashed.

After calling emergency services, Trooper Elliott continued his investigation by examining the car embedded in the storage units. In plain view, Trooper Elliott noticed two unopened cans of beer and an empty 12-pack of 12-ounce beer cans. Licensee was the only person at the scene and did not indicate that anyone was with him at the time of the accident.

It was unclear how recently the accident had occurred. For example, Trooper Elliott could not recall any smoke or steam emanating from the vehicle, which could have suggested a recent accident. Nevertheless, Licensee did not give Trooper Elliott reason to conclude that there had been any great delay between the time of the accident and the time that Trooper Elliott found him. Due to the apparent severity of Licensee's injuries, Trooper Elliott did not conduct any field sobriety tests, but he did administer a preliminary breath test (PBT) that confirmed the presence of alcohol.

Licensee was transported to the hospital, and Trooper Elliott advised Licensee that he was under arrest for DUI. Trooper Elliott read the DL-26B form[3] in its entirety to Licensee. Then, Trooper Elliott requested that Licensee undergo chemical testing. Licensee did not respond to the request and looked away from Trooper Elliott. As a result, Trooper Elliott determined that Licensee's silence constituted a refusal, as the DL-26B form expressly states that silence is deemed a

---

[3] The DL-26B form was admitted as DOT's Exhibit 2 at the hearing. *See* Tr. of Procs. at 13. Trooper Elliott indicated that he completed the form with Licensee's information, the affidavit, and his signature. *See id.* Additionally, Trooper Elliott explained that he began reading the form where it says "[i]t is my duty as a police officer to inform you of the following," and proceeded to read Items 1, 2, 3, and 4 verbatim to Licensee. *See id.* at 14.

3

refusal. Trooper Elliott admitted that he had never met Licensee prior to this occasion, did not know Licensee's baseline speech pattern, and could not say whether his speech was his normal speech. Additionally, Trooper Elliott acknowledged that a person may smell of alcohol without being intoxicated. Licensee stated that although he remembered all of the conversation with Trooper Elliott at the scene, he does not recall the conversation at the hospital.

On October 3, 2022, Licensee received a notice from DOT that his driver's license would be suspended for 12 months for his refusal to submit to a blood draw. Licensee timely filed a petition for appeal, and the trial court conducted a hearing, after which it dismissed Licensee's appeal and suspended his operating privilege.

Licensee timely appealed and filed a court-ordered Pennsylvania Rule of Appellate Procedure 1925(b) statement, in relevant part, challenging the admissibility of the PBT evidence and asserting that Trooper Elliott lacked reasonable grounds to request a chemical test. The trial court issued a responsive opinion, concluding, first, that the PBT result was properly used only to assess probable cause to arrest Licensee and reasonable grounds for a chemical test, and second, that the totality of the circumstances supported Trooper Elliott's reasonable belief that Licensee was DUI.

## II. ISSUES

Licensee raises two issues for our review. First, Licensee asserts that the trial court erred in overruling his objection to the admissibility of his PBT result. *See* Licensee's Br. at 13. Second, Licensee contends that Trooper Elliott lacked sufficient reasonable grounds to request a chemical test. *See id.* at 13-14.

4

To sustain a license suspension under the Implied Consent Law, DOT must establish four elements: (1) the licensee was arrested for DUI by a police officer who had reasonable grounds to believe that the licensee was DUI; (2) the police officer requested the licensee to submit to a chemical test; (3) the licensee refused to submit to the chemical test; and (4) the licensee was warned that a refusal would result in his license suspension. *See Giannopoulos v. Dep't of Transp., Bureau of Driver Licensing*, 82 A.3d 1092, 1094 (Pa. Cmwlth. 2013). Once DOT has established these elements, the burden shifts to the licensee to prove that he was incapable of making a knowing and conscious refusal or that he was physically unable to take the test. *See id.* Here, Licensee challenges only the trial court's determination that Trooper Elliott had reasonable grounds to believe that Licensee had been driving while under the influence of alcohol at the time he was arrested for DUI.

### A. Admissibility of PBT Evidence

Licensee asserts that the trial court improperly admitted into evidence his PBT result because DOT had not established that the device used by Trooper Elliott to administer the PBT was approved by the Department of Health as required by Section 1547(k) of the Vehicle Code.[5] *See id.* at 15-17 (citing *Commonwealth v.*

---

[4] Our review in a license suspension case is limited to whether the factual findings of the trial court are supported by substantial evidence and whether the trial court committed an error of law or an abuse of discretion. *See Negovan v. Dep't of Transp., Bureau of Driver Licensing*, 172 A.3d 733, 735 n.4 (Pa. Cmwlth. 2017).

[5] Section 1547(k) provides:

> A police officer, having reasonable suspicion to believe a person is driving or in actual physical control of the movement of a motor vehicle while under the influence of alcohol, may require that person prior to arrest to submit to a preliminary breath test on a device approved by the Department of Health for this

*Townsend*, 613 A.2d 564 (Pa. Super. 1992); *Commonwealth v. McGinnis*, 515 A.2d 847 (Pa. 1986); *Commonwealth v. Denmark*, 800 A.2d 947 (Pa. Super. 2002); *Commonwealth v. Brigidi*, 6 A.3d 995 (Pa. 2010); and *Commonwealth v. Marshall*, 824 A.2d 323 (Pa. Super. 2003)).[6]

"The test described in Section 1547(k) of the Vehicle Code is a [PBT] in the field, performed on an instrument which detects the presence of alcohol" and is administered prior to arrest. *Ryan v. Dep't of Transp., Bureau of Driver Licensing*, 823 A.2d 1101, 1104 (Pa. Cmwlth. 2003). "The sole purpose of the field sobriety test is to assist the officer in determining whether a driver should be placed under arrest, not whether the driver is actually intoxicated," and "serves the same purpose as other, perhaps more familiar, field sobriety tests, such as walking a straight line or touching your nose with your finger." *Id.*

Additionally, PBTs and post-arrest, chemical tests are treated differently under the Implied Consent Law. *See id.* at 1104-05 (explaining that the latter test is "administered *after arrest* for the purpose of determining the alcoholic content of the blood" (internal quotation marks omitted; emphasis in original)). Regarding field sobriety tests specifically, "a police officer who has reasonable grounds to order a chemical test may do so, despite the fact that the driver has passed a field sobriety test prior to the chemical test." *Dep't of Transp., Bureau of Driver*

---

purpose. The sole purpose of this preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest. The preliminary breath test shall be in addition to any other requirement of this title. No person has any right to expect or demand a preliminary breath test. Refusal to submit to the test shall not be considered for purposes of subsections (b) and (e).

75 Pa.C.S. § 1547(k).

[6] Although decisions of the Superior Court are not binding on this Court, they may provide persuasive authority where they address analogous issues. *See Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

*Licensing v. Harbaugh*, 595 A.2d 715, 718 (Pa. Cmwlth. 1991). "Likewise, failed field sobriety tests are not necessary to establish reasonable grounds to believe that a licensee is operating a vehicle while under the influence." *Curry v. Dep't of Transp., Bureau of Driver Licensing*, 318 A.3d 1012, 1021 (Pa. Cmwlth. 2024).

Licensee cites several cases in support of his contention that the trial court improperly admitted his PBT result. *See* Licensee's Br. at 16-17. However, these cases are inapposite either because the court considered whether chemical test results were admissible in criminal proceedings under Section 1547(c) or merely clarified that approval of a PBT device by the Department of Health, as contemplated in Section 1547(k), was insufficient to establish admissibility in criminal proceedings. *See, e.g.*, *Townsend*, 613 A.2d at 565 (suppressing chemical evidence in a criminal trial because the admissibility requirements set forth in Section 1547(c) were not met); *McGinnis*, 515 A.2d at 851 (reversing judgment of sentence because the only evidence of intoxication was the inadmissible result of a breath-test administered on a modified, unapproved device); *Denmark*, 800 A.2d at 952-53 (addressing the admissibility requirements in Section 1547(c)); *Brigidi*, 6 A.3d at 998-99 (holding that the Department of Health's approval of a device for PBT established only its use for determining probable cause for DUI, not the admissibility of test results in an underage drinking prosecution); and *Marshall*, 824 A.2d at 328 (reversing judgment of sentence because the results of a PBT administered on a portable device are inadmissible at a criminal trial, citing Section 1547(k)).

We find Licensee's argument unpersuasive. Notably, none of the authorities Licensee cites involve civil license suspension proceedings. In fact, each is a criminal appeal concerning the admissibility of evidence in a criminal trial. Here, in the instant *civil* proceeding, Trooper Elliott testified that the PBT result was

7

one *factor* that contributed to his conclusion that he had reasonable grounds to believe Licensee was DUI. *See* Tr. of Procs. at 17, 21. At the hearing, DOT's counsel questioned Trooper Elliott about Licensee's PBT result for the limited purpose of showing that Trooper Elliott possessed reasonable grounds to believe that Licensee was DUI and to request a chemical test, not to establish that Licensee was actually intoxicated. *See* Tr. of Procs. at 10 (when Licensee's counsel objected to the admission of PBT result, DOT responded that in ascertaining reasonable grounds, Trooper Elliott "is permitted to use any and all facts or circumstances in the totality of his understanding of the circumstances at the time").

Additionally, Licensee suggests that Section 1547(k) requires Department of Health approval for his PBT result to be admissible here. However, we discern no such requirement in the statutory text. Section 1547(k) authorizes a police officer with *reasonable suspicion* to administer a PBT to assist that officer in his investigation and ascertain whether there is probable cause to arrest a person for DUI. Thus, any limitation or requirement outlined in Section 1547(k) is applicable in a criminal context, where "the sole purpose of a preliminary breath test is to assist the officer in determining whether or not the person should be placed under arrest." 75 Pa. C.S. § 1547(k).

Clearly, this is distinct from the *reasonable grounds* required to request chemical testing in a civil license suspension matter. *Cf. Marchese v. Com.*, 169 A.3d 733, 740 (Pa. Cmwlth. 2017) (declining to extend Fourth Amendment protections applicable in criminal cases to civil license suspension proceedings and noting that "a license suspension stemming from a refusal to submit to chemical testing is a separate civil proceeding from a criminal DUI proceeding arising out of the same incident," suggesting that a PBT result may not be subject to exclusion in

8

the same manner it would be in criminal proceedings). Furthermore, the Court in *Ryan* likens a PBT to other field sobriety tests, which are not determinative of whether a licensee was intoxicated. *See Ryan*, 823 A.2d at 1104; *Curry*, 318 A.3d at 1021.

For these reasons, we conclude that a PBT result may be admitted along with other supporting evidence, for the purpose of showing that an officer had reasonable grounds to believe a licensee was DUI, and, further, that the admissibility of this evidence in civil proceedings is not subject to the limitations set forth in Section 1547(k) of the Vehicle Code. Therefore, we discern no error in the trial court's decision to admit the PBT result in this case.

### B. Reasonable Grounds

Licensee asserts that Trooper Elliott lacked reasonable grounds to request a chemical test. *See* Licensee's Br. at 18-20. According to Licensee, Trooper Elliott's testimony describing Licensee's bloodshot eyes, odor of alcohol, admission to drinking, and positive PBT test was sufficiently rebutted on cross-examination. *See id.* Thus, Licensee avers, the trial court erred in concluding that the police had reasonable grounds to believe that Licensee was operating a motor vehicle while under the influence of alcohol, so as to allow the police to request that Licensee submit to chemical testing. *See id.*

"Whether reasonable grounds exist is a question of law reviewable by a court on a case-by-case basis." *Sisinni v. Dep't of Transp., Bureau of Driver Licensing*, 31 A.3d 1254, 1257 (Pa. Cmwlth. 2011). Although "there is no set list of [behaviors] that a person must exhibit for an officer to have reasonable grounds for making an arrest . . . staggering, swaying, falling down, belligerent or uncooperative behavior, slurred speech, and the odor of alcohol" are all factors that have been

9

accepted as reasonable grounds. *Stancavage v. Dep't of Transp., Bureau of Driver Licensing*, 986 A.2d 895, 899 (Pa. Cmwlth. 2009). "Reasonable grounds exist to support a license suspension when a person in the position of the police officer, viewing the facts and circumstances as they appeared at the time, could have concluded that the licensee was operating the vehicle while under the influence of intoxicating liquor." *Sisinni*, 31 A.3d at 1257.

The test for whether a police officer has "reasonable grounds is not very demanding[,] and the police officer need not be correct in his belief that the motorist had been driving while intoxicated." *Sisinni*, 31 A.3d at 1259; *see also Yencha v. Dep't of Transp., Bureau of Driver Licensing*, 187 A.3d 1038, 1044 (Pa. Cmwlth. 2018) ("reasonable grounds . . . requires even less proof than what is necessary to establish probable cause for a criminal prosecution"). "Even if later evidence proves the officer's belief to be erroneous, this will not render the reasonable grounds void." *Yencha*, 187 A.3d at 1044-45 (Pa. Cmwlth. 2018). Additionally, "it is not necessary for an arresting officer to actually observe the licensee operating the vehicle, nor does the existence of reasonable alternative conclusions bar the arresting officer's actual belief from being reasonable." *Schlag v. Dep't of Transp., Bureau of Driver Licensing*, 963 A.2d 598, 603 (Pa. Cmwlth. 2009). Further, it is not necessary for a licensee to fail a field sobriety test in order for a police officer to have reasonable grounds to request the licensee to submit to chemical testing. *Sisinni*, 31 A.3d at 1257.

"[A]n officer's reasonable belief that the licensee was [DUI] will justify a request to submit to chemical testing if one reasonable interpretation of the circumstances as they appeared at the time supports the officer's belief." *Yencha*, 187 A.3d at 1045 (citations and quotations omitted). Further, courts appropriately

defer to an investigating officer's experience and observations where reasonable grounds exist to support the officer's belief based on the totality of the circumstances. *See id.*; *Hasson v. Dep't of Transp., Bureau of Driver Licensing*, 866 A.2d 1181, 1186 (Pa. Cmwlth. 2005) (holding that "a police officer may rely upon his experience and personal observations to render an opinion as to whether a person is intoxicated").

Here, Trooper Elliott testified that he found Licensee approximately 100 feet from a vehicle crash, where there were no other passengers, and the car was registered to Licensee's father. *See* Tr. of Procs. at 6-7, 9; Trial Ct. Op. at 5. Trooper Elliott noticed an odor of alcohol emanating from Licensee as well as the presence of slurred speech and bloodshot eyes. *See* Tr. of Procs. at 6; Trial Ct. Op. at 5. While speaking to Trooper Elliott, Licensee admitted to drinking two beers earlier in the night, and on further inspection of the vehicle, Trooper Elliott discovered an empty 12-pack of beers along with two unopened cans inside. *See* Tr. of Procs. at 8; Trial Ct. Op. at 5. Trooper Elliott also performed a PBT on Licensee that yielded a positive result for the presence of alcohol. *See* Tr. of Procs. at 910; Trial Ct. Op. at 5. Viewing these facts and circumstances as they appeared at the time, Trooper Elliott reasonably believed that Licensee was DUI, rendering his request for a chemical test proper.[7] Trooper Elliott's testimony that he had never met Licensee before, did not know Licensee's baseline speech pattern, could not determine whether his speech was normal for him, and his acknowledgement that a person may smell of alcohol without being intoxicated does not undermine Trooper Elliott's

---

[7] In our view, the evidence supporting Trooper Elliott's reasonable belief that Licensee had been operating a motor vehicle while intoxicated is particularly strong. Therefore, we note that even if the trial court had erred in admitting the PBT result, considering the totality of the circumstances, the remaining evidence establishes reasonable grounds in this case. *See Stancavage*, 986 A.2d at 899; *Sisinni*, 31 A.3d at 1257-59; *Yencha*, 187 A.3d at 1044-45.

testimony or the trial court's conclusion that reasonable grounds existed, particularly in light of Trooper Elliott's experience as a police officer. *See Sisinni*, 31 A.3d at 1257-59; *Yencha*, 187 A.3d at 1044-45.

## IV. CONCLUSION

The results of a PBT are admissible in civil proceedings to support a finding that an officer had reasonable grounds to believe a licensee was DUI, notwithstanding the limitations set forth in Section 1547(k) relevant in criminal proceedings. Additionally, in this case, substantial evidence supports the trial court's findings that sufficient, reasonable grounds existed to request Licensee to submit to chemical testing. Therefore, DOT met its burden to support Licensee's license suspension. *See Giannopoulos*, 82 A.3d at 1094. Accordingly, we affirm.

**LORI A. DUMAS, Judge**

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Chase Staller,                           :
                 Appellant                :
                             :   No. 952 C.D. 2024
                 v.                       :
                             :
Commonwealth of Pennsylvania,            :
Department of Transportation,            :
Bureau of Driver Licensing               :

# **O R D E R**

AND NOW, this 9th day of January, 2026, the order entered by the Court of Common Pleas of Perry County on June 26, 2024, is AFFIRMED.

 

 

**LORI A. DUMAS, Judge**